**Beatrice Hinds CARLAND, Plaintiff,**

v.

**METROPOLITAN LIFE INSURANCE COMPANY, Defendant.**

No. 88–1713–K.

United States District Court, D. Kansas.

Dec. 27, 1989.

Andrew L. Oswald, Martindell, Swearer, Cabbage, Ricksecker & Hertach, Hutchinson, Kan., for plaintiff.

William A. Wells, Gott, Young & Bogle, Wichita, Kan., for appellant.

## MEMORANDUM AND ORDER

PATRICK F. KELLY, District Judge.

This matter is before the court on motion by the defendant, Metropolitan Life Insurance Co. (Metropolitan), to dismiss or for summary judgment. In addition, plaintiff Beatrice Hinds Carland, in her response, seeks summary judgment.

The plaintiff originally filed this action in Reno County District Court, seeking to recover proceeds from a life insurance policy on her former husband, Ralph Carland. In the state court petition, the plaintiff alleged that a divorce decree between her and her former husband required that she was to be the sole beneficiary of the policy in question. Metropolitan then sought removal of the case to this court under 26 U.S.C. § 1441(a) & (b) (diversity and federal question jurisdiction). Metropolitan then filed a motion to dismiss or for summary

judgment, alleging that it has already properly paid out the full proceeds of the policy according to the terms of the divorce decree and to a change of beneficiary form executed by the decedent husband. In response, the plaintiff asserts she does state a claim under the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, and that she is entitled to summary judgment thereunder.

The court finds herein that the plaintiff does state a cause of action under ERISA. In addition, since none of the facts alleged by the plaintiff in her summary judgment motion are controverted by the defendant, they are deemed admitted under D.Kan. Rule 206(c). As a result, the court finds herein that the plaintiff is entitled to judgment as a matter of law.

### Findings of Facts

The following are the facts set forth in the parties' summary judgment motions and they are not controverted by the party in opposition thereto.

Ralph C. Carland, as an eligible employee of Metropolitan, was covered for group life insurance under Metropolitan Group Policy No. 50 G.L., Certificate No. 134181 (group policy). The group policy is part of an employee welfare benefit plan governed by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 *et seq.*

Mr. Carland and plaintiff, Beatrice Carland, were divorced on September 4, 1964. The journal entry of the divorce decree reads in pertinent part as follows:

> The court further finds that the parties hereto have entered into an agreement which contains the mutual covenants of the parties hereto with regard to that for which they would jointly ask the court to decree regarding child custody and visitation, child support, alimony, property division and expenses. An executed copy of said agreement is attached hereto and made a part hereof.
>
> . . . .
>
> [I]n accordance with said agreement *Defendant is ordered to pay the premiums on, and to make irrevocable designation of Plaintiff as the sole primary beneficiary under and of, the policies of insurance on the life of defendant listed in Schedule "A" appended to the Settlement Agreement to which reference has been made herein.*

(Emphasis added).

### SCHEDULE "A"

Policies of Insurance on life of Ralph C. Carland

| Policy No. | Company | Face Amount |
|---|---|---|
| 17 083 285A | Metropolitan Life Ins. Co. | $ 5,000.00 |
| 22 127 306A | Metropolitan Life Ins. Co. | 10,000.00 |
| 21 300 423 | New York Life Ins. Co. | 5,000.00 |
| 21 372 985 | New York Life Ins. Co. | 5,000.00 |
| Ctf. 134181 | Metropolitan Group Ins. | Current value, less 1000.00 |

(Journal Entry, Case No. 13926, D.Ct. Reno Co., Kan., Sept. 4, 1964). At the time the property settlement was negotiated, Beatrice Carland was a homemaker and Ralph Carland was an employee of defendant Metropolitan Life Insurance Co., holding the position of District Manager, Hutchinson District Office.

On September 4, 1964, the value of Mr. Carland's life insurance under Policy Ctf. 134181 (group policy) was $14,000.00. At the time of Mr. Carland's death on April 9, 1987, some 23 years after the divorce decree, the value of Mr. Carland's life insurance under the group policy was $51,480.00.

In a letter to the defendant dated February 15, 1974, Mr. Carland said the following:

> Please note that the attached schedule is from my divorce decree of September 4, 1964, Case 13926. The decree provides that my Group life Insurance is designated to go to my divorced wife—Beatrice Hinds Carland—in the amount of the current value, less $1,000.00 as of the date of the decree.
>
> Therefore, I direct the Company to make the following Beneficiary designations:
>
> *Primary beneficiaries:*
>
> BEATRICE HINDS CARLAND—divorced wife, $13,000.00 (Current value, less $1,000.00 as of date of divorce, September 4, 1964)
>
> OLIVE KOHLMEYER CARLAND—present wife, Group Insurance over and above $13,000.00

*Secondary Beneficiaries:*

RALPH C. CARLAND, JR. and CHRISTOPHER BRIEN CARLAND (Share and share alike of all to survivor)

I further request that the beneficiary designation be effective as of the date of this memo of record.

On or about March 1, 1974, Mr. Carland attempted to change the beneficiary of the group policy from solely Beatrice Carland to Beatrice Carland as beneficiary for $13,000.00, and Olive Carland, his second wife, as beneficiary for any amount in excess of $13,000.00. On the same day, Mr. Carland designated Olive Carland as beneficiary for all of the group life insurance. It is unclear which designation was completed first. ·

Ralph Carland died on April 9, 1987. On April 10, 1987, Beatrice Carland gave written notice to Metropolitan of her claim to the entire proceeds of the insurance policy under the aforementioned divorce decree and enclosed a copy of the relevant divorce decree provisions. The Tulsa Metropolitan office received the letter on April 12, 1987. On April 14, 1987, defendant's Tulsa office sent plaintiff claim application forms which required a death certificate. On May 4, 1987, while waiting for receipt of the death certificate requested from the New York City Bureau of Vital Records, plaintiff spoke with defendant's Wichita district office. She was assured by that office that she was the beneficiary of the policy, but that the company needed a death certificated in order for it to formally process her claim. On May 6, 1987, plaintiff again spoke with the Wichita office, requesting information as to the policy's value. On May 8, 1987, plaintiff was informed by Wilma Sandoval of defendant's Wichita office, that a call to defendant's New York office had revealed that the company intended to pay another beneficiary. At this time Wilma Sandoval informed the New York office that the Wichita office was in possession of the divorce decree which designates plaintiff as the sole and irrevocable beneficiary of the proceeds of the policy. On May 11, 1987, the plaintiff sent a letter to one of Metropolitan's offices and en-

closed a certified copy of the divorce decree. On May 13, 1987, plaintiff sought the intervention of the Kansas Insurance Commissioner's Office.

On or about May 22, 1987, Metropolitan paid Olive Carland all of the insurance proceeds plus interest. Subsequently, Metropolitan contacted Olive Carland and sent her a copy of the divorce decree. Olive Carland agreed that plaintiff Beatrice Carland was entitled to $13,000.00 under the divorce decree and reimbursed $13,000.00 to Metropolitan. Metropolitan paid plaintiff $13,623.99, claiming such represented her share under the 1964 divorce decree plus interest.

Thereafter, plaintiff filed a lawsuit against Metropolitan contending that she should have received all of the insurance proceeds, $51,480.00, from the group life policy rather than just $13,000.00 plus interest.

### Standard of Review

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). In considering a motion for summary judgment, this court must examine all evidence in a light most favorable to the opposing party. *McKenzie v. Mercy Hospital*, 854 F.2d 365, 367 (10th Cir.1988). Further, the party moving for summary judgment must demonstrate its entitlement beyond a reasonable doubt. *Ellis v. El Paso Natural Gas Co.*, 754 F.2d 884, 885 (10th Cir.1985). The moving party need not disprove plaintiff's claim, but rather, must only establish that the factual allegations have no legal significance. *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir.1987).

■■ In resisting a motion for summary judgment, the opposing party may not rely upon mere allegations, or denials, contained in its pleadings or briefs. Rather, the party must come forward with specific

facts showing the presence of a genuine issue of material fact for trial and significant probative evidence supporting the allegations. *Burnette v. Dresser Industries, Inc.*, 849 F.2d 1277, 1284 (10th Cir.1988). One of the principal purposes of summary judgment is to isolate and dispose of factually unsupported claims or defenses, and the rule should be interpreted in a way that allows it to accomplish this purpose. *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Furthermore, it must be noted that cross-motions for summary judgment do not automatically empower the court to dispense with the determination of whether questions of material fact exist. *Lac Courte Oreilles Band of Lake Superior Chippewa Indians v. Voigt*, 700 F.2d 341, 349 (7th Cir.), *cert. denied*, 464 U.S. 805, 104 S.Ct. 53, 78 L.Ed.2d 72 (1983). The court must consider both cross-motions with no less careful scrutiny than an individual motion. *Missouri Pac. R. Co. v. Kansas Gas & Elec. Co.*, 862 F.2d 796 (10th Cir.1988).

### Conclusions of Law

Both parties agree that the group policy in question is an employee welfare benefit plan governed by ERISA, 29 U.S.C. §§ 1001 *et seq.*, and that the plaintiff is a "beneficiary" as that term is used under ERISA, 29 U.S.C. § 1002(8). Thus, the applicability of ERISA and the plaintiff's "beneficiary" status will not be addressed by the court. However the court will address whether this case is properly before the court under its removal jurisdiction; whether the plaintiff has stated a cause of action; and what standard of review to use in determining the propriety of Metropolitan's decision to pay the proceeds of the life insurance to two beneficiaries.

The Supreme Court has recently found that even if a complaint filed in state court claims to raise only state common law causes of action, Congress has manifested an intent that if the cause of action is preempted by ERISA, 29 U.S.C. § 1144(a), and displaced by ERISA's civil enforcement provisions, 29 U.S.C. § 1132(a), any such civil complaint is necessarily federal in character and properly removable under 28 U.S.C. § 1441(b). *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 60, 107 S.Ct. 1542, 1544–45, 95 L.Ed.2d 55 (1987); and *Pilot Life Insurance Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

■ Under 29 U.S.C. § 1144(a), ERISA preempts all state laws which "relate to" any employee benefit plan (except as provided in subsection (b), which exempts state laws (statutes) regulating the business of insurance). The Tenth Circuit, citing *Pilot Life*, has noted that the scope of ERISA preemption is very broad, particularly in light of the legislative history of ERISA. *Torix v. Ball Corp.*, 862 F.2d 1428, 1429 (10th Cir.1988); *see also Straub v. Western Union Telegraph Co.*, 851 F.2d 1262, 1263 (10th Cir.1988) (claims against former employer for breach of contract and negligent misrepresentation are preempted). Since the thrust of the plaintiff's complaint is that Metropolitan wrongfully and erroneously denied her benefits which were due her under the group plan life insurance policy, there can be little doubt such claim "relates to" the employee benefit plan under 29 U.S.C. § 1144(a). Thus, the court has removal jurisdiction in this matter under 28 U.S.C. § 1441(b).

In addition, the Supreme Court in *Taylor* found that the preemptive force of ERISA, 29 U.S.C. § 1144(a), is so powerful that it entirely displaces any state cause of action which "relates to" any "employee benefit plan," as described in 29 U.S.C. § 1001(a) and not exempt under 29 U.S.C. § 1001(b), and that the state law complaint is to be recharacterized as an action arising under federal law as allowed by ERISA § 502(a) (29 U.S.C. § 1132(a)). *Taylor*, 481 U.S. at 64–67, 107 S.Ct. at 1546–48; *see also, Amos v. Blue Cross–Blue Shield of Alabama*, 868 F.2d 430, 432 (11th Cir.1989) ("ERISA pre-emption does not act as a defense to a state-law claim, which is the usual effect of federal preemption; instead, ERISA preemption converts the related claim into a federal question"). Since 29 U.S.C. § 1132(a)(1)(B) provides in pertinent part, that "[a] civil action may be brought—by a

participant or beneficiary—to recover benefits due to him under the terms of his plan," it is clear that plaintiff's claim for wrongful denial of benefits can be recharacterized within the scope of 29 U.S.C. § 1132(a) as a federal claim.

At this point the court notes that this is a relatively new and developing area of the law and there is not a lot of guidance in how to interpret many of the provisions of ERISA, 29 U.S.C. §§ 1001 *et seq.* However, this much is clear. The court must distinguish between "employee welfare benefit plans" (welfare plans) and "employee pension benefit plans" (pension plans). *See* 29 U.S.C. § 1002(1) & (2). One court has recently noted the following concerning the differences between welfare plans and pension plans:

> [E]mployee pension plans, which entail management of funds of money and thus require the establishment of trusts, receive extensive codification of mandatory provisions. In simple terms Congress has in essence written these contracts for the parties, or at least provided many of their key terms. The sections of the statute which apply solely to pension plans, welfare plans being expressly excluded, legislate mandatory requirements for the covered plans. Sections 1051 through 1086, for instance, welfare plans expressly excluded by section 1051(1), set forth standards for creation of vested rights in pension plans, provide the conditions under which rights become nonforfeitable, set accrual requirements, state how the plans shall be funded, as well as setting forth numerous other requirements. These sections are best understood as creating express contract terms that are mandated by law when parties establish such plans.
>
> Some of the remaining sections of the statute apply to both pension plans and welfare plans. Sections 1021 through 1031, for instance, establish reporting and disclosure requirements for the plans. Sections 1101 through 1114 legislate the fiduciary responsibilities of people who create or manage the plans. Section 1131 provides for criminal enforcement. Section 1132 creates a mechanism for civil enforcement. And section 1140 makes it unlawful to interfere with rights protected under the statute.
>
> Therefore, Congress included welfare benefit plans within the scheme of ERISA, but did not provide an extensive array of mandatory provisions as it did for pension plans. The implication here is that parties retain a greater degree of freedom to contract between themselves as to what benefits will be provided under welfare plans, when and how they will be provided, what rights the respective parties have under the plans, as well as the right to negotiate other provisions as they see fit. In substance welfare benefit plans remain private contracts, with the parties determining what the express terms are. Because they are included in ERISA, determination of the meaning of their terms as well as the means for their enforcement have become a matter of federal law, but this law will only be fleshed out for welfare benefit plans as decisions are issued developing a federal common law to govern them. The statute provides the framework but courts must provide the substantive law.

*Vogel v. Independence Federal Sav. Bank,* 692 F.Supp. 587, 591–92 (D.Md.1988). *See also, Pilot Life,* 481 U.S. at 56, 107 S.Ct. at 1558 (federal courts are to develop a "federal common law of rights and obligations under ERISA-regulated plans"); *Franchise Tax Board v. Construction Laborers Vacation Trust,* 463 U.S. 1, 24, n. 26, 103 S.Ct. 2841, 2854, n. 26, 77 L.Ed.2d 420 (1983) (" 'a body of Federal substantive law will be developed by the courts to deal with issues involving rights and obligations under private welfare and pension plans' ") (quoting 129 Cong.Rec. 29942 (1974) (remarks of Sen. Javits)); *Sampson v. Mutual Ben. Life Ins. Co.,* 863 F.2d 108 (1st Cir.1988) (federal common law that had grown up around ERISA governed the interpretation of the employee policy).

■■■ The parties agree that the life insurance policy in question is part of an employee welfare plan, not a pension plan. Thus, as the *Vogel* court pointed out,

§§ 1051–1086 expressly do not apply. *Vogel*, 692 F.Supp. at 591. As a result, plaintiff's argument that the 1964 divorce decree is a qualified domestic relation order under 29 U.S.C. § 1056(d)(3)(A) & (B) is without merit. Furthermore, the antialienation provision, 29 U.S.C. § 1056(d)(1), does not apply, and the policy in question, like any welfare plan benefit, may be freely assigned or encumbered. The court does note, however, that the policies and purposes that led Congress to create an exception to the antialienation provision for domestic relation orders may be a factor for this court to consider in applying the appropriate federal common law to the outcome of this case.

Given the fact that the parties agree that the policy in question is a welfare plan governed by ERISA and that the plaintiff is a beneficiary within the meaning of ERISA, the main issue for the court to now address is what is the proper standard of review of Metropolitan's asserted wrongful denial of benefits.

The Supreme Court has recently determined that trust principles apply for determining the appropriate standard of review for actions under § 1132(a)(1)(B). *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. ——, ——, 109 S.Ct. 948, 953–54, 103 L.Ed.2d 80, 92 (1989). Applying established principles of trust law, the Supreme Court in *Bruch* held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* 489 U.S. at ——, 109 S.Ct. at 956, 103 L.Ed.2d at 95.

Metropolitan asserts that the plan documents provide it with discretionary judgment based on the following provisions: (1) Part of the group policy cover page which states that Metropolitan agrees "to make the payments herein provided, with respect to the several Employees insured hereunder, in accordance with and subject to the provisions of this Policy;" (2) Section 7 of the group policy which states that "[u]pon receipt by the Insurance Company of satis-

factory proof, in writing, that any Employee insured hereunder shall have died, the Insurance Company shall pay, subject to the terms hereof, to the Beneficiary of record of the Employee, the amount of Life Insurance, if any, in force hereunder on account of such Employee, in accordance with Section 6 hereof, at the date of his death;" and (3) part of the Metropolitan booklet entitled "Other Important Information," part of the summary plan description furnished to employees under ERISA, which states the following at page 21:

> The Metropolitan Employee Benefits Committee is a group of senior Company Officers given the authority and responsibility to direct the overall administration of your Insurance and Retirement Program and other employee benefit plans.

These provisions do not show that the "plan administrator has the power to construe uncertain terms or that eligibility determinations are to be given deference." *Bruch*, 489 U.S. at ——, 109 S.Ct. at 954, 103 L.Ed.2d at 93. At most, these provisions inform employees of the group plan of the inherently discretionary function of a plan administrator. The Supreme Court in *Bruch* rejected the argument that the inherently discretionary function of a plan administrator was enough to find the fiduciary had discretionary authority so as to justify differential review. *See Bruch*, 489 U.S. at ——, 109 S.Ct. at 954–55, 103 L.Ed.2d at 93. Since the provisions brought to the attention of the court do not show that the employees agreed to give the trustee the requisite discretionary authority, the court finds that *de novo* review is to be applied. The conclusion that this court ought to use *de novo* review is also supported by the fact that interpretation of a document outside the plan, the divorce decree, is key to the outcome of this case.

Metropolitan's major argument to justify paying only part of the insurance proceeds to the plaintiff is that there is only one possible interpretation of "current value" as it is used in the divorce decree—the value as of the date of the divorce. The only support cited by Metropolitan for such

a mandatory interpretation of "current value" is the definition of "current" in the AMERICAN HERITAGE DICTIONARY, Second College Ed. (1985): "a. Belonging to the present time. b. now in progress." Such an argument is without merit.

If the parties had so clearly intended that definition of current value to apply, why didn't they just write out the applicable value on Schedule "A" like they did for the other policies? In addition, it is undisputed that the group policy had no actual cash value during the life of Mr. Carland. Thus, to say the parties clearly intended "current value" to mean $14,000.00 as the value as of the date of the divorce is arbitrary and totally based on hindsight. Furthermore, it is just as likely that the definition of "current", "[b]elonging to the present time," means as of the date of insured's death, as it is likely that it means the value as of the date of the divorce. At the least, such term is ambiguous.

Moreover, it is undisputed that on or about March 1, 1974, Mr. Carland attempted to change the beneficiary of the group policy from solely Beatrice Carland to Beatrice Carland as beneficiary for $13,000.00 and to Olive Carland for the amount in excess of $13,000.00, and that on the same day Mr. Carland designated Olive Carland as the beneficiary for all of the group policy proceeds. Metropolitan admits that it is unable to determine which of these two beneficiary designations was executed first. Thus, it is clear that Metropolitan had notice of the possible rival claims before it paid out any of the proceeds to Olive Carland. Furthermore, Metropolitan admitted at oral argument that if it knows of a rival claim, its normal practice is to interplead the rival parties so the proceeds can be paid to the correct party. Thus, if Metropolitan had followed this normal interpleader procedure, payment to the wrong beneficiary could have been avoided.

Furthermore, the 1964 journal entry of the divorce decree states that the "Defendant is ordered to pay the premiums on, and to make *irrevocable designation* of the Plaintiff as the *sole primary beneficiary* under and of, the policies of insurance on the life of the Defendant." (Emphasis added). In addition, in a letter by Mr. Carland to Metropolitan dated February 15, 1974, Mr. Carland stated,

> Therefore, I direct the Company to make the following beneficiary designations:
>
> *Primary Beneficiaries:*
>
> BEATRICE HINDS CARLAND—divorced wife, $13,000.00 (Current value, less $13,000.00 as of date of divorce, September 4, 1964)
>
> OLIVE KOHLMEYER CARLAND—present wife, Group Insurance over and above $13,000.00

Thus, it is clear that in addition to giving Metropolitan notice of a possible adverse claim by Beatrice Carland, this letter gave Metropolitan notice that the beneficiary designation desired by Mr. Carland was contrary to the 1964 journal entry of the divorce decree because it designates two "primary beneficiaries" instead of directing the plaintiff, Beatrice Carland, as the "sole primary beneficiary."

■ Therefore, if Schedule "A" 's use of current value is viewed in context of the 1964 journal entry, it is clear that at the date of the divorce the parties intended the plaintiff to be the sole primary beneficiary of the entire proceeds of the group policy. This conclusion is also supported by the affidavit of J. Richards Hunter, attorney of the Carlands for their 1964 divorce. In the affidavit, Mr. Hunter says the following:

> [Mr.] Carland explained that for these and other reasons, it was impossible to attribute to such group policy a "face value" at any given time. Only at death or retirement could all factors be taken into account and a true determination be made as to value. He stated further that the proper way to express that concept was that which he had employed in his list, in other words, "current value" meant *"value at date of death"*, which was the only date having any meaning for employees like [Mr.] Carland under a group policy. He advised against using any other language, since doing so might only deprive his family of that which he wanted ... them [to] have.

(Pltf.'s Memo. in Opp. to Def.'s Mtn. for Dism. or Summ. Judg., Aff. of J. Richards Hunter, p. 2). As a result, it is clear the plaintiff is entitled to the "current value" of the group policy as of the date of Mr. Carland's death, $51,480.00, minus $1,000.00.

A rule which requires Metropolitan to pay the remainder of the wrongfully withheld proceeds, even though it has already paid out such remainder proceeds to another beneficiary, should not come as a shock to insurers because, as the Supreme Court said in *Bruch*, 489 U.S. at ——, 109 S.Ct. at 955, 103 L.Ed.2d at 93, "[a] trustee who is in doubt as to the interpretation of the instrument can protect himself by obtaining instruction from the court." *See also,* Bogert & Bogert § 559, at 162–168; Restatement (Second) of Trusts § 201, comment b (1959). Thus, the burden to collect the proceeds that were wrongfully paid out to Olive Carland should be on Metropolitan, not the plaintiff, as a matter of federal common law. *See Bruch*, 489 U.S. at ——, 109 S.Ct. at 953–54, 103 L.Ed.2d at 92.

Even if this court were to find that the trustee had discretionary authority under terms of the plan, there is plenty of evidence to establish the trustee abused his discretion in this case or acted unreasonably. For instance, 29 U.S.C. § 1133 provides in pertinent part as follows:

> In accordance with regulations of the Secretary, every employee benefit plan shall—
>
> > (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, ...

In addition, 29 C.F.R. 2560.503–1 (1988) provides in pertinent part as follows:

> (f) *Content of notice.* A plan administrator or, if paragraph (c) of this section is applicable, the insurance company, insurance service, or other similar organization, shall provide to every claimant who is denied a claim for benefits written notice setting forth in a manner calculated to be understood by the claimant:
>
> > (1) The specific reason or reasons for the denial;
> >
> > (2) Specific reference to pertinent plan provisions on which the denial is based;
> >
> > (3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and
> >
> > (4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review.
>
> (g) *Review procedure.* (1) Every plan shall establish and maintain a procedure by which a claimant or his duly authorized representative has a reasonable opportunity to appeal a denied claim to an appropriate named fiduciary or to a person designated by such fiduciary, and under which a full and fair review of the claim and its denial may be obtained. Every such procedure shall include but not be limited to provisions that a claimant or his duly authorized representative may:
>
> > (i) Request a review upon written application to the plan;
> >
> > (ii) Review pertinent documents; and
> >
> > (iii) submit issues and comments in writing.

The facts in this case indicate that Metropolitan had notice of the plaintiff's claim for the life insurance proceeds in this case, and despite such knowledge paid the full amount of the proceeds out to Olive Carland. There is no evidence that Metropolitan gave plaintiff written notice of the reasons for denial of her claim as required by 29 C.F.R. § 2560.503–1(f) or that it provided plaintiff with any type of review procedure as required by 29 C.F.R. § 2560.503–1(g).[1]

---

[1] The court notes that the usual remedy for not following proper procedures is a remand to the fiduciary requiring him to follow the correct procedures. *See Wolfe v. J.C. Penney Co., Inc.,* 710 F.2d 388 (7th Cir.1983); *Grossmuller v. Intern. Union, United Auto., Aero.,* 715 F.2d 853 (3d Cir.1983). However, in this case, where the insurance company has already paid out the

If Metropolitan had followed the proper procedures and not paid out the life insurance proceeds so quickly to Olive Carland, it would have seen that the 1964 journal entry of the divorce, which required Mr. Carland to designate the plaintiff as the "irrevocable ... *sole* primary beneficiary" of the policy in question, was clearly in conflict with Mr. Carland's February 15, 1974 letter which designated another "primary beneficiary" in addition to the plaintiff. (Emphasis added). At that point, a reasonable fiduciary would have at least sought instruction from the court on how to distribute the proceeds. *See Bruch,* 489 U.S. at ——, 109 S.Ct. at 954–55, 103 L.Ed.2d at 93. Thus, payment of the proceeds to the wrong beneficiary could have been avoided. Therefore, given the uncontroverted facts in this case, the court finds that Metropolitan's actions in this case were unreasonable.

At this point the court notes that plaintiff has raised the issue of her entitlement to attorney fees under 29 U.S.C. § 1132(g)(1). Since the parties have not had an opportunity to submit briefs thereon, the court will reserve its determination until such time as the parties have fully briefed the issues of entitlement to attorney fees and the reasonable amount of such fees.

IT IS THEREFORE ORDERED this 26th day of December, 1989, that the defendant's motion to dismiss or for summary judgment is denied.

IT IS FURTHER ORDERED that the plaintiff's motion for summary judgment is granted. The parties are directed to brief the issues of plaintiff's entitlement to attorney fees and the reasonable amount of such fees.

---

proceeds to the wrong person, such remand would be a useless procedure which would needlessly delay the ultimate outcome of this case. In addition, the failure to give the required notice is not an essential element of our ultimate finding that Metropolitan acted unreasonably in this case.