**ST. FRANCIS REGIONAL MEDICAL CENTER, Plaintiff–Appellant,**

v.

**BLUE CROSS AND BLUE SHIELD OF KANSAS, INC., Defendant–Appellee.**

No. 93–3100.

United States Court of Appeals, Tenth Circuit.

March 6, 1995.

Richard C. Hite (Arthur S. Chalmers, with him on the briefs) of Kahrs, Nelson, Fanning, Hite & Kellogg, Wichita, KS, for plaintiff-appellant.

Gary D. McCallister of Davis, Unrein, Hummer, McCallister & Buck, Topeka, KS (Mark A. Buck of Davis, Unrein, Hummer, McCallister & Buck, Topeka, KS; and Alan L. Rupe, Steven J. Rupp, and Thomas L. Steele of Rupe & Girard Law Offices, P.A., Wichita, KS, with him on the brief), for defendant-appellee.

Before EBEL, McKAY, and REAVLEY,* Circuit Judges.

McKAY, Circuit Judge.

Plaintiff–Appellant, St. Francis Regional Medical Center ("St. Francis"), challenges the use by Defendant–Appellee, Blue Cross Blue Shield of Kansas ("Blue Cross"), of clauses in its health care insurance policies that prohibit policyholders from assigning their right to receive insurance proceeds to health care providers who have not contracted with Blue Cross. Some of the challenged policies are covered by the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001–1461, and others are governed by Kansas state law. St. Francis claims that Blue Cross's restrictions on the assignability of health insurance benefits violate both ERISA and Kansas public policy. St. Francis further claims that a Kansas statute expressly

---

* The Honorable Thomas M. Reavley, Circuit Judge, United States Court of Appeals for the Fifth Circuit, sitting by designation.

authorizing Blue Cross to restrict assignability violates the Kansas Constitution's prohibition against special legislation. Kan. Const. art. 12, § 1. The district court dismissed St. Francis's claims under Fed.R.Civ.P. 12(b)(6). We now AFFIRM the dismissal both as to the ERISA claims and as to the claims based on Kansas law.

## I. BACKGROUND

Blue Cross was originally chartered as a nonprofit medical and hospital insurance corporation under Kan.Stat.Ann. § 40–19c10(c). At that time, Blue Cross enjoyed a unique status as a nonprofit insurer and operated under a statutory mandate to control health care costs. Id.[1] Pursuant to that mandate, Blue Cross restricted the right of policyholders to assign their benefits as a way to encourage providers of medical services to contract with Blue Cross and to submit to its cost control policies. St. Francis and other providers prefer that patients assign their health insurance benefits to the providers so that the providers can collect their payment directly from Blue Cross and thereby avoid the risk of delayed payment or nonpayment that arises when providers must collect fees from the patients themselves. The patients also prefer to have the providers collect directly from the insurance company. Hence, Blue Cross's limitations on the assignability of benefits in its insurance policies provided a strong incentive for hospitals to contract with Blue Cross because only contracting providers could receive assignments of benefits under a Blue Cross policy. The Kansas Supreme Court in *Augusta Medical Complex, Inc. v. Blue Cross*, 230 Kan. 361, 634 P.2d 1123, 1126–27 (1981), upheld Blue Cross's restrictions on the assignability of benefits when Blue Cross was a nonprofit insurer. The Supreme Court noted that Blue Cross

had a statutory directive to control costs and held that the restriction of assignability was a potentially effective method of cost containment.

More recently, Blue Cross, at the direction of the Kansas legislature, rechartered itself as a mutual life insurance company under Kan.Stat.Ann. § 40–501 (effective July 1, 1992).[2] Blue Cross ceased to operate under a unique statutory mandate when it became a mutual life insurance company, but the Kansas legislature authorized Blue Cross to continue to limit the assignment of its insurance benefits to those providers entering into separate contracts with Blue Cross. Kan.Stat. Ann. § 40–19c06(b) (as amended by Senate Bill No. 66, L.1992, Ch. 196) [hereinafter "Senate Bill 66"]. Senate Bill 66 as enacted provides that any corporation "currently or previously organized [as a nonprofit medical and hospital service corporation] may include provisions allowing for direct payment of benefits only to contracting health care providers." Kan.Stat.Ann. § 40–19c06(b).

At about the same time that it changed its corporate status, Blue Cross implemented a new provider contracting strategy in the Wichita market. Departing from its longtime strategy of contracting with every willing health care provider, Blue Cross requested bids from the three largest acute care hospitals in Wichita and indicated that it intended to select only two of the bidders to form a Blue Cross preferred provider organization. St. Francis declined to bid for the contract under the belief that it could continue its existing contractual relationship with Blue Cross.[3] Blue Cross subsequently exercised its contractual right to terminate its relationship with St. Francis.

St. Francis then filed suit in Kansas state court seeking (1) an injunction to prevent

---

**1.** "Each corporation organized under the nonprofit medical and hospital service corporation act shall devote a reasonable effort to control costs, including both its administrative costs and cost charged to it by participating hospitals and health care providers." Kan.Stat.Ann. § 40–19c10(c).

**2.** The Kansas legislature directed any nonprofit medical and hospital service corporation to convert either to a mutual life insurance company or

a mutual company other than life. Kan.Stat. Ann. § 40–19c12. Blue Cross, the only such entity extant in Kansas, elected to become a mutual life insurance company.

**3.** Only one hospital in Wichita, HCA Wesley Medical Center ("Wesley"), submitted a bid in response to Blue Cross's request for proposal. Blue Cross and Wesley later entered into an agreement.

Blue Cross from rejecting the assignments of benefits by Blue Cross policyholders to St. Francis and (2) a declaration that Senate Bill 66 is unconstitutional and that Blue Cross's provisions restricting assignability are void. St. Francis argued that Blue Cross no longer enjoyed a unique statutory position under Kansas law and could no longer justify its exemption from the general Kansas common law prohibition of restraints on assignability. St. Francis further maintained that Senate Bill 66 granted unique corporate powers to Blue Cross and thereby violated the Kansas Constitution's equal protection and special legislation provisions. Blue Cross, pleading the existence of ERISA claims, removed the action to the United States District Court for the District of Kansas pursuant to 28 U.S.C. § 1441(b). Blue Cross then moved for a dismissal under Fed.R.Civ.P. 12(b)(6).[4]

The district court granted Blue Cross's motion to dismiss the complaint. *St. Francis Regional Medical Ctr. v. Blue Cross Blue Shield*, 810 F.Supp. 1209, 1220 (D.Kan.1992). The court first held that ERISA preempts state law and that Congress intended the assignability of benefits to be left to the contractual provisions of individual plans without the constrictions of a mandatory rule for or against assignability. *Id.* at 1213–14. The court next ruled against St. Francis on its state law claims. The court held that St. Francis lacked standing to attack Senate Bill 66 because St. Francis had not been directly injured by its enactment. *Id.* at 1215–16. Alternatively, the court also rejected St. Francis's constitutional and public policy challenges on their merits. The court concluded that Kansas public policy supports restrictions on the assignability of benefits because the state's interests in the freedom to contract and in the containment of rising health care costs outweigh the importance of free assignability. *Id.* 1217–20. The court further held that Senate Bill 66 does not improperly create classifications within a similarly situated class of corporations in violation of the Kansas Constitution's prohibition against special legislation because it applies uniformly to all former nonprofit insur-

ers. *Id.* at 1217. The court therefore found that Senate Bill 66 does not grant Blue Cross powers that other insurance companies lack.

St. Francis raises four arguments in its appeal of the district court's decision: (1) that Blue Cross's restrictions on assignability violate ERISA; (2) that Blue Cross's restrictions on assignability violate Kansas's public policy; (3) that St. Francis has standing to challenge Senate Bill 66's constitutionality under the Kansas Constitution; and (4) that under the Kansas Constitution Senate Bill 66 is unconstitutional because it is special legislation. St. Francis further argues that, contrary to the appropriate standard for ruling on a 12(b)(6) motion, the district court improperly relied on disputed facts outside of St. Francis's pleadings to dismiss its action. In particular, St. Francis contends that the court did not accept its allegations as true that Blue Cross's new contracting strategy in Wichita merely shifts costs from the participating to non-participating providers without producing a net decrease in overall health care costs.

## II. *ERISA*

The parties agree that some of the challenged insurance policies are covered by ERISA but that others are exempt from ERISA and, hence, governed by Kansas state law. We address those policies covered by ERISA first. We review *de novo* the district court's dismissal of St. Francis's action pursuant to Fed.R.Civ.P. 12(b)(6). *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991). We also review the court's construction of ERISA *de novo*. *National Elevator Indus., Inc. v. Calhoon*, 957 F.2d 1555, 1557 (10th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 406, 121 L.Ed.2d 331 (1992). In assessing whether dismissal is appropriate, we presume the plaintiff's factual allegations are true and consider whether the plaintiff's complaint has stated a legally sufficient claim upon which relief may be granted. *Miller*, 948 F.2d at 1565.

4. The district court exercised discretionary jurisdiction over the pendent state law claims pursuant to 28 U.S.C. § 1441(c).

■ There is no dispute that ERISA preempts any Kansas law affecting the assignability of insurance benefits for those Blue Cross plans covered by ERISA. ERISA preempts any state laws which "relate to" plans covered by ERISA. 29 U.S.C. § 1144(a). A state law " 'relates to' an employee benefit plan ... if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96–97, 103 S.Ct. 2890, 2899–2900, 77 L.Ed.2d 490 (1983). We construe ERISA's preemptive scope broadly. *Id.* at 98, 103 S.Ct. at 2900; *Settles v. Golden Rule Ins. Co.*, 927 F.2d 505, 508–09 (10th Cir.1991). However, we will not find preemption where a state law's impact on an ERISA plan is tenuous or remote. *Id.* at 509 (citing *Shaw*, 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21).

We conclude that ERISA preempts state law on the issue of the assignability of benefits because material provisions in the employee benefits plans covered by ERISA would be directly affected if Kansas law were to be interpreted as prohibiting restrictions on assignment. ERISA itself is silent on the issue of the assignability of benefits in insurance plans. By contrast, ERISA specifically bars the assignment of benefits obtained under pension plans. 29 U.S.C. § 1056(d)(1). The fact that ERISA provides no parallel bar against the assignability of health care benefits gives rise to an inference that Congress intended to treat such benefits differently, and that Congress did not intend to enact a policy precluding their assignability. *See Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 836–37, 108 S.Ct. 2182, 2188–90, 100 L.Ed.2d 836 (1988); *Hermann Hosp. v. MEBA Medical & Benefits Plan*, 845 F.2d 1286, 1289 (5th Cir.1988). On the other hand, we do not interpret ERISA's silence as to health care benefits as an invitation to the states to adopt their own rules pertaining to the assignability of benefits. Instead, we must give content to ERISA's silence through interpretation of the statute and congressional intent. *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56, 107 S.Ct.

1549, 1557, 95 L.Ed.2d 39 (1987) (noting Congress's expectation that courts would develop a "federal common law of rights and obligations" around ERISA's provisions).

■ We interpret ERISA as leaving the assignability of benefits to the free negotiations and agreement of the contracting parties. *Davidowitz v. Delta Dental Plan*, 946 F.2d 1476, 1480–81 (9th Cir.1991); *Washington Hosp. Ctr. Corp. v. Group Hospitalization and Medical Servs., Inc.*, 758 F.Supp. 750, 752 n. 2 (D.D.C.1991). It would be contrary to Congress's laissez-faire attitude of declining to establish any statutory rule either requiring or prohibiting the assignability of benefits to allow states to intervene with their own policies mandating or forbidding assignability. As Congress has chosen not to interfere with the parties' own freedom of contract on this matter, so must we insist that the states not interfere with the parties' freedom of choice. Allowing the states to dictate the assignability of benefits would undoubtedly "relate to" these insurance plans. Any such overriding state policy would therefore "regulate the type of benefits or terms of ERISA plans," *National Elevator*, 957 F.2d at 1558–59 (quotations omitted), and thus would constitute an improper interference with an ERISA plan. In so holding, we are in accord with a similar holding in the Eighth Circuit. *See Arkansas Blue Cross and Blue Shield v. St. Mary's Hosp., Inc.*, 947 F.2d 1341, 1349–50 (8th Cir. 1991), *cert. denied*, 504 U.S. 957, 112 S.Ct. 2305, 119 L.Ed.2d 227 (1992).

St. Francis's reliance on *Misic v. Building Serv. Employees Health and Welfare Trust*, 789 F.2d 1374 (9th Cir.1986), is misplaced. Although *Misic* overruled a lower court's holding that ERISA categorically forbids the assignment of welfare benefits, *Misic* did not hold that ERISA requires assignment. *Id.* at 1377. Ultimately, *Misic* is consistent with our holding in this case that ERISA cannot be read to impose a mandate favoring or opposing assignability.[5]

---

5. The other cases cited by St. Francis are similarly inapposite and do not go so far as to hold that ERISA requires free assignment. *See Hermann Hosp. v. MEBA Medical & Benefits Plan*,

845 F.2d 1286, 1289 (5th Cir.1988); *Carland v. Metropolitan Life Ins. Co.*, 727 F.Supp. 592, 597–98 (D.Kan.1989), *aff'd*, 935 F.2d 1114 (10th Cir.), *cert. denied*, 502 U.S. 1020, 112 S.Ct. 670, 116

We thus conclude that ERISA's silence on the issue of the assignability of insurance benefits leaves the matter to the agreement of the contracting parties.[6] We therefore AFFIRM the district court's ruling and hold that dismissal was appropriate for those policies covered by ERISA.

## III. *STATE CONSTITUTIONAL CLAIMS*

We now turn to those policies that fall outside the ERISA framework and are therefore governed by state law.[7] There is no doubt that the Kansas legislature has attempted to settle this issue: Senate Bill 66 expressly authorizes Blue Cross to limit the assignability of its insurance policies and thus codifies the rule of *Augusta* (issued when Blue Cross was a non-profit insurer uniquely regulated by Kansas statute). Alas, at the present time, Senate Bill 66, by its terms, empowers *only* Blue Cross to issue policies containing nonassignability clauses; other health insurers do not have the benefit of such explicit statutory authorization. St. Francis thus contends that the bill runs afoul of Article XII, Section 1, of the Kansas Constitution, which commands that the "legislature shall pass no special act conferring corporate powers." Senate Bill 66 therefore cannot itself foreclose the outcome of this case.

■ Before turning to the constitutional question, we must first examine the threshold issue of standing. The district court found that, under Kansas law, St. Francis lacked standing to challenge the constitutionality of Senate Bill 66. We review this conclusion *de novo*. *Board of County Comm'rs v. W.H.I., Inc.*, 992 F.2d 1061, 1063 (10th Cir.1993). Under Kansas law, a person must be directly affected by government action to challenge its constitutionality and may not

invoke the rights of others. *Manzanares v. Bell*, 214 Kan. 589, 522 P.2d 1291, 1312 (1974). The Kansas Supreme Court has adopted the test of *Warth v. Seldin* to determine standing where an individual has challenged the federal constitutionality of state legislation: a plaintiff must allege a personal injury and a causal connection between that injury and the challenged government action which could be redressed by judicial intervention. *Harrison v. Long*, 241 Kan. 174, 734 P.2d 1155, 1158, *appeal dismissed*, 484 U.S. 804, 108 S.Ct. 50, 98 L.Ed.2d 15 (1987) (quoting *Warth v. Seldin*, 422 U.S. 490, 498–99, 95 S.Ct. 2197, 2204–05, 45 L.Ed.2d 343 (1975)).

■ Here St. Francis alleges a concrete personal injury directly caused by the challenged Kansas statute. If upheld, the statute would enable Blue Cross to restrict the assignability of benefits to contracting providers, and St. Francis would then incur the risk of delayed payments or non-payment from individual patients. The invalidation of Senate Bill 66 would eliminate this economic risk. Blue Cross argues, and the district court concluded, that the potential injury to St. Francis was merely indirect. It is true that the injury would result from restrictions on the rights of third parties to assign expected health insurance benefits. Kansas, however, embraces a flexible test for standing that looks beyond direct injury to find standing whenever a plaintiff possesses a personal stake in a justiciable controversy. *See, e.g., Delight Wholesale v. Overland Park*, 203 Kan. 99, 453 P.2d 82 (1969) (finding standing where a franchiser has attacked the constitutionality of an ordinance limiting the activities of its franchisees); *Joe Self Chevrolet, Inc. v. Board of County Comm'rs*, 247 Kan. 625, 802 P.2d 1231, 1234–35 (1990)

---

L.Ed.2d 761 (1991). *Carland* relies on a case that explicitly states that Congress intended to leave a greater degree of freedom to contract for welfare benefit plans. *See id.* at 597 (citing *Vogel v. Independence Fed. Sav. Bank*, 692 F.Supp. 587, 591–92 (D.Md.1988)).

6. St. Francis's charge that the district court relied on facts outside of its complaint to dismiss its claims fails with regard to those policies covered by ERISA. The district court ruled as a

*matter of law* that ERISA should not be interpreted to require the assignability of insurance proceeds and hence did not rest its holding on any *factual* considerations.

7. The district court did not identify which policies fell under ERISA because it concluded that the nonassignability clauses were valid for both the ERISA and non-ERISA policies. As we reach the same result, we also see no need to address this issue.

(holding that a secured creditor has standing to challenge the constitutionality of a statute used by the government to levy and obtain priority on property owned by a debtor). We therefore hold that St. Francis has alleged a concrete economic injury whose causal connection to Senate Bill 66 is sufficiently tangible to support standing.

■ Article XII, Section 1, in essence, forbids the granting of statutory powers to one corporation that are not possessed by other, similarly situated corporations.[8] The legislature cannot circumvent this prohibition by creative drafting because special legislation can always be drafted in a superficially neutral manner. *Patrick v. Board of Comm'rs*, 105 Kan. 153, 181 P. 611, 614 (1919) ("The mere fact that a statute is general in form will not save it if its operation and effect are necessarily local and special.").[9] The legislature, moreover, cannot confer special powers upon a select group of corporations through the identification of a class that is "arbitrary and fictitious, not based upon distinctions having a reasonable and substantial relation to the subject matter involved." *Board of County Comm'rs v. Robb*, 166 Kan. 122, 199 P.2d 530, 538 (1948), *appeal dismissed sub nom. Big Slough Drainage Dist. v. Board of County Comm'rs*, 336 U.S. 957, 69 S.Ct. 893, 93 L.Ed. 1110 (1949). Thus, the law must treat—in substance, not in form—all like corporations uniformly.

In its original complaint, St. Francis alleged that Blue Cross "is now, at its own instigation, only one of a number of mutual life insurance companies operating under [Kansas law]." Aplt.App. at 5. There is nothing in the pleadings to suggest that this classification of Blue Cross is in any way "arbitrary" or "fictitious." We therefore accept St. Francis's allegations that Blue Cross properly falls within the class of mutual life insurance companies that provide health insurance.

We now reach the heart of the issue before us: does Senate Bill 66 grant Blue Cross a power—namely, the ability to restrict the assignability of benefits—that other health care providers lack under Kansas law? If so, Senate Bill 66 is unconstitutional special legislation from which Blue Cross cannot benefit. If not, Senate Bill 66 is legally superfluous, albeit constitutional, and again Blue Cross gains nothing from the bill. The general legality of nonassignability clauses must in turn be resolved by reference to Kansas public policy.

In *Augusta*, the Kansas Supreme Court held decisively that Kansas public policy favored the use of nonassignability clauses by Blue Cross—at that time, a nonprofit state-affiliated insurer with a statutory mandate to control health care costs. The use by Blue Cross of nonassignability clauses created an incentive for hospitals to contract with Blue Cross as "member hospitals." Member hospitals, in turn, were subject to a variety of cost control programs initiated by Blue Cross. The Kansas Supreme Court therefore concluded that nonassignability clauses acted as a cost containment measure and, as such, advanced the statutory goal of limiting health care costs. *Augusta*, 634 P.2d at 1126–27. After balancing the interests at stake, the *Augusta* court determined that this "vital public interest" in health care cost containment, in conjunction with the tradi-

---

8. Blue Cross argues that Section 1 applies only to municipal corporations. This argument lacks merit. The Kansas Supreme Court has clearly stated that the special legislation applies to private corporations. *City of Topeka v. Gillett*, 32 Kan. 431, 4 P. 800, 801 (1884).

9. Conversely, the fact that this statute presently applies only to Blue Cross (and is quite unlikely to apply in the future to any other corporation) does not require us to conclude that Senate Bill 66 is special legislation. *Patrick* notes that a statute which grants corporate powers to a fixed and unchangeable number of corporations is ordinarily special legislation. 181 P. at 614. However, *Patrick* does not state, and we do not hold, that a fixed classification is per se unconstitutional. Prior to the passage of Senate Bill 66, Blue Cross stood in a unique position *vis a vis* Kansas and all other health insurers in Kansas. It is therefore neither surprising nor dispositive that Senate Bill 66 applies only to Blue Cross. *Compare State v. City of Lawrence*, 79 Kan. 234, 100 P. 485, 490–91 (1909) (analyzing legislation granting Lawrence, Kansas, special powers relevant to the operation of the University of Kansas). The relevant inquiry looks to the substance, not the form, of the legislation and turns upon an analysis of the manner in which the challenged legislation treats the members of the relevant class.

tional freedom to contract as one pleases, outweighed the equally traditional freedom to assign a "chose in action." [10] *Augusta,* 634 P.2d at 1125–27. A number of other state courts have reached similar conclusions. *See, e.g., Parrish v. Rocky Mountain Hosp. & Med. Servs. Co.,* 754 P.2d 1180, 1182 (Colo. App.1988); *Obstetricians–Gynecologists, P.C. v. Blue Cross & Blue Shield,* 219 Neb. 199, 361 N.W.2d 550, 555–56 (1985); *Kent Gen. Hosp., Inc. v. Blue Cross & Blue Shield,* 442 A.2d 1368, 1371–72 (Del.1982).

From the outset of this litigation, St. Francis has strenuously contested the contemporary validity of the conclusions drawn by the Kansas Supreme Court in *Augusta.* In its complaint, St. Francis alleges that the transformation of Blue Cross from a nonprofit insurer willing to contract with all interested hospitals into a for-profit insurer selectively contracting with certain hospitals has eliminated any benefit that nonassignability clauses may have held as cost containment measures. St. Francis maintains that, at this stage of the proceedings, we must accept this allegation as true, and therefore it asks that we re-examine the balance struck by the Kansas Supreme Court in *Augusta.*

■ This we cannot do. After *Augusta,* the utility of nonassignability clauses as a method of cost control simply is not a pure question of fact susceptible of quantitative proof. The Kansas Supreme Court has confronted, and brusquely dismissed, factual arguments based upon the alleged inefficacy of nonassignability clauses as a means of facilitating cost control:

The plaintiffs argue that there is no evidence that the cost control methods of Blue Cross will in fact accomplish their intended purpose. In support thereof, plaintiffs aver that the plaintiff hospitals generally have lower rates than do member hospitals. This really has no bearing on the question before us. *Augusta,* 634 P.2d at 1127. St. Francis may be correct that nonassignability clauses merely redistribute costs among hospitals, with any savings inuring to Blue Cross as increased profit. *Augusta,* however, did not turn upon proof that nonassignability clauses would always or inevitably contain costs; rather, it rests upon a legal conclusion that nonassignability clauses, as a device, could contain costs and therefore are legitimate cost containment devices. We are bound by the reasoning of the Kansas Supreme Court and are therefore required to assume, pleadings notwithstanding, that nonassignability clauses are a method of cost containment.

■ Our acknowledgment of the value of nonassignability clauses does not foreclose our inquiry, however. Kansas public policy is dictated by a balancing of relevant interests, merely one of which is cost containment. *Augusta* does not compel us to hold that balance static in the face of changed circumstances. *See, e.g., Reazin v. Blue Cross & Blue Shield,* 635 F.Supp. 1287 (D.Kan.1986), *aff'd,* 899 F.2d 951 (10th Cir.), *cert. denied,* 497 U.S. 1005, 110 S.Ct. 3241, 111 L.Ed.2d 752 (1990) (distinguishing *Augusta* because of Blue Cross's refusal to deal with certain hospitals). We recognize that the factors weighed by the Kansas Supreme Court no longer accurately reflect the health insurance regime in Kansas. Blue Cross is now a for-profit health insurer rather than a state-affiliated non-profit insurer. Blue Cross no longer operates under a statutory mandate to control health care costs, nor is Blue Cross empowered by statute to undertake measures to implement that mandate. Blue Cross has abandoned its universalist market strategy and has turned instead to a competitive scheme in which hospitals bid for the right to contract with Blue Cross.[11]

---

**10.** A "chose in action" is a right to bring "an action or to recover a debt or money." Black's Law Dictionary 241 (6th ed. 1990). Health care benefits are thus "choses in action."

**11.** We note that nonassignability clauses assume a dramatically less benign hue in a competitive bidding environment. No longer a prod to encourage a few unwilling hospitals to assent to a nearly universal regime of cost controls, the clauses act as a club to extract competitively advantageous concessions from hospitals reluctant to be shut out of the Blue Cross system—a strategy plausibly designed either to contain the cost of health care or to maximize profits.

Similar concerns of anticompetitive behavior supported the outcome reached in *Reazin,* where the district court refused to grant Blue Cross summary judgment against another of the perennial challenges to its nonassignability clauses.

Nonetheless, we find that the balance struck in *Augusta* still retains sufficient merit to narrowly defeat the arguments pressed upon us by St. Francis. St. Francis has based its case largely upon the importance of the free alienability of choses in action. Against that interest are again arrayed the freedom of contract and the utility of nonassignability clauses as cost containment measures. These are precisely the interests weighed by the Kansas Supreme Court in *Augusta*—a balancing that did not favor alienability. Notwithstanding St. Francis's forceful challenge to the continued wisdom of allowing nonassignability clauses in the new competitive environment in which Blue Cross operates, we must therefore abide by the determination made in *Augusta* and AFFIRM the decision of the district court.

The ruling of the district court is AFFIRMED both as to the ERISA and as to the state constitutional claims.

AFFIRMED.

EBEL, Circuit Judge, concurring in part and dissenting in part.

I agree with most of the majority's well reasoned and cogently presented opinion and concur as to its disposition of St. Francis's claims under ERISA. However, I dissent to express my disagreement with the majority's treatment of St. Francis's state law claims. In particular, I believe that St. Francis has alleged facts that, if proven, would state a claim that Blue Cross's current use of nonassignability provisions violates Kansas public policy and that Senate Bill 66 is an impermissible grant of a special corporate power in contravention of the Kansas Constitution's prohibition on special legislation, which precludes reliance on that legislation to define Kansas public policy. Unlike the majority, I would not dismiss St. Francis's allegations as a matter of law and deprive St. Francis of an opportunity to substantiate its allegations.

The essential flaw in the majority's opinion is its view that the Kansas Supreme Court's opinion in *Augusta Medical Complex, Inc. v. Blue Cross,* 230 Kan. 361, 634 P.2d 1123 (1981), establishes as a matter of law and under all circumstances that the public policies favoring containment of health care costs and freedom of contract are advanced by Blue Cross's use of nonassignability clauses and that those public policies outweigh the public policy favoring free assignability of choses in action. Contrary to the majority's suggestion, *Augusta* did not hold that a court must presume that nonassignability clauses foster cost containment regardless of evidence to the contrary about their actual operation in the market. Rather, the *Augusta* court made a judgment that, under the specific circumstances presented in that case, such nonassignability clauses did not violate Kansas public policy as it was then defined for Blue Cross as a special state-chartered nonprofit health insurer.

There are several important distinctions between *Augusta* and the situation presented in the instant case. First, the *Augusta* court was bound by a specific statutory mandate that Blue Cross no longer enjoys *to experiment* with techniques and devices that *may result* in industry-wide cost containment. *Id.* 634 P.2d at 1127. The *Augusta* court appears to have concluded that nonassignability clauses fell within the broad scope of that

---

In *Reazin,* Blue Cross had unilaterally refused to deal with selected health care providers. The district court concluded that Blue Cross's actions had subverted the logical underpinnings of *Augusta,* which had assumed that nonassignability clauses would be used to encourage participation in the Blue Cross system. *See Reazin,* 635 F.Supp. at 1335 ("[Blue Cross] cannot argue its nonassignment of benefits policy is intended under these circumstances to serve the statutory purposes relied on by the [*Augusta*] court."). We affirmed without comment. *See* 899 F.2d 951.

Notwithstanding our appreciation of the more dubious aspects of nonassignability clauses, St. Francis cannot benefit from *Reazin* because, having chosen not to bid upon Blue Cross's contract,

St. Francis cannot now claim to have been unilaterally and unwillingly excluded from the Blue Cross system. It is true that Blue Cross, in implementing its competitive bidding scheme, unilaterally terminated the existing relationship with St. Francis; in so doing, however, Blue Cross merely exercised its contractual rights. St. Francis, moreover, has raised no antitrust or unfair competition claims, which figured prominently in *Reazin.* St. Francis has likewise failed to argue that the potentially anticompetitive impact of nonassignability clauses has shifted the balance found by the Kansas Supreme Court. We therefore have no cause to re-examine *Augusta* from the perspective of a party who has been excluded from the Blue Cross system after having entered a bid.

authority given by the legislature to Blue Cross while it was specially chartered to experiment with various techniques. Thus, all Blue Cross needed to do to uphold its utilization of nonassignability clauses was to show that such clauses arguably might result in industry-wide cost containment.[1] The Kansas Supreme Court did not reach any factual conclusions that nonassignability clauses, in fact, reduced hospital costs overall. Now that Blue Cross no longer is legislatively authorized to experiment with techniques that may or may not work to reduce costs, the balancing analysis changes and the inquiry moves from permissible possible consequences to probable consequences.

Moreover, even if *Augusta* had held that nonassignability clauses did reduce costs, the changes in Blue Cross's status would now require a new determination. Blue Cross's new strategy of favoring only one or two hospitals in a market with the ability to accept assignment of Blue Cross benefits is a dramatic change in marketing, and that ought to be one of the items weighed in the balancing analysis that *Augusta* requires us to perform in determining whether Kansas public policy would tolerate the challenged restraints on assignability of choses in action. That balancing analysis has never been done. Until such a balancing analysis is performed—under the current state of facts—we cannot say whether Kansas public policy as expressed by its common law would approve this limitation or not. In any event, we must remember that we are dealing with this case at a motion to dismiss stage, and St. Francis has certainly *alleged* that Blue Cross's current practices do not lead to cost containment.

In its earlier form, Blue Cross had a statutory obligation to reduce health care costs in the entire industry. It sought to meet that obligation by imposing strict benefit limits in its policies, which limits had to be accepted as payment in full by the contracting hospitals. Those provisions had the effect of containing the costs of the hospitals that contracted with Blue Cross. As an incentive to

encourage all hospitals to contract with Blue Cross, Blue Cross utilized nonassignability clauses so that a hospital that did not contract with Blue Cross could not indirectly get all of the advantages that providers received who did contract with Blue Cross. However, the nonassignability clause did not contain costs by its own terms, but rather it simply provided the incentive to persuade the individual hospitals to accept other cost containment provisions imposed by Blue Cross contracts.

Once Blue Cross became a mutual life insurance company, it shed itself of any statutory obligation to reduce costs industrywide. It was no longer concerned about reducing costs in the entire industry, but rather was interested only in reducing costs for itself. As part of that new strategy, it no longer sought to bring the entire hospital industry under its benefits schedule. Instead, it sought to direct all of its business to several favored hospitals in exchange for the best possible deal from those particular hospitals. Once again, nonassignability clauses were used as an incentive to encourage several select hospitals to contract with Blue Cross. The difference, however, is that there are now hospitals with whom Blue Cross refuses to contract, and, thus, those hospitals will not be under Blue Cross's benefits schedule. St. Francis argues that funneling all of the Blue Cross business to several favored hospitals will substantially increase the per-bed costs of the disfavored hospitals, who will then lose all the Blue Cross patients. St. Francis alleges that the net effect industry-wide will be an *increase* in hospital costs. The difference results from Blue Cross's change in marketing strategy from an all-inclusive industry-wide strategy to a divide-and-conquer strategy. The former focuses on industry-wide costs and the latter focuses on what is best for Blue Cross individually as a for-profit company. Once Blue Cross is treated like an ordinary health care insurer without special statutory powers, these allegations about the actual operation of nonassignability provisions must

---

1. This is why the Kansas Supreme Court said it had no bearing in the analysis whether Blue Cross's cost containment methods would "in fact accomplish their intended purpose." *Augusta*, 634 P.2d at 1127. That language, quoted by the majority at page 1467 of its opinion, does not show the controlling nature of *Augusta*, but rather highlights that the court there was addressing quite a different issue from that now presented to us in St. Francis's complaint.

be included in our analysis of whether Kansas public policy would continue to tolerate restraints on the assignability of choses in action.

The case of *Reazin v. Blue Cross and Blue Shield* certainly provides a reason to think that the public policy balance might be altered by Blue Cross's adoption of its new exclusive marketing strategy. 635 F.Supp. 1287 (D.Kan.1986), *aff'd,* 899 F.2d 951 (10th Cir.), *cert. denied,* 497 U.S. 1005, 110 S.Ct. 3241, 111 L.Ed.2d 752 (1990). Although St. Francis does not allege an antitrust claim as did the plaintiff in *Reazin, Reazin* draws a sharp distinction between Blue Cross's marketing strategy that makes its contracts available on a nondiscriminatory basis to the entire industry and a marketing strategy that seeks simply the best deal for Blue Cross by excluding some hospitals from its system. *Id.* at 1333–35. When Blue Cross is not trying to encourage hospitals to join its network, it "cannot argue its nonassignment of benefits policy is intended . . . to serve the statutory purposes relied on by the court [in *Augusta* ]." *Id.* at 1335. The *Reazin* analysis is thus more applicable than the *Augusta* analysis.[2]

Further, as the majority recognizes, Blue Cross cannot rely on Senate Bill 66 because that statute has been challenged as special legislation and we must assume for purposes of this appeal that no substantive reason exists to treat Blue Cross differently from any other health insurer—unlike when Blue Cross was a unique nonprofit statutory entity. Thus, "Senate Bill 66 . . . cannot itself foreclose the outcome of this case." Maj. Op. at 1465.

My conclusion that we should not dismiss St. Francis's action pursuant to Fed.R.Civ.P. 12(b)(6) does not reflect any judgment about the ultimate merits of St. Francis's claims. I note, along with the majority, that several other state courts have upheld restrictions on the assignability of health insurance proceeds. Maj. Op. at 1466–67. Nevertheless, St. Francis is entitled to its day in court. Because I do not read *Augusta* as barring the courthouse door, I respectfully dissent.

---

2. The majority acknowledges *Reazin* but somehow distinguishes it because St. Francis was not excluded by Blue Cross after bidding to join the Blue Cross system. Maj. Op. at 1467 n. 11. However, St. Francis' failure to bid does not seem relevant to its present claim. If St. Francis were arguing that Blue Cross impermissibly refused to contract with it, St. Francis would have a standing problem given that it never bid for such a contract. However, that is not St. Francis's complaint. Rather, St. Francis complains that as an outsider, it and all other outsiders should be able to accept assignments from patients insured by Blue Cross, because Blue Cross's current use of nonassignability provisions violates Kansas public policy.

The majority also seeks to distinguish *Reazin* by arguing that St. Francis here, unlike in *Reazin,* has failed to argue that the "anti-competitive impact" of nonassignability clauses shifts the public policy balance struck in *Augusta.* Maj.

Op. at 1467 n. 11. However, the majority is mistaken in its statement that St. Francis does not advance that claim. To the contrary, St. Francis has alleged that the public policy balance struck by the *Augusta* court is altered by Blue Cross's new exclusive contracting strategy, even though it has not asserted a specific right to contract with Blue Cross itself. The majority elsewhere recognizes that "[f]rom the outset of this litigation, St. Francis has strenuously contested the contemporary validity of the conclusions drawn by the Kansas Supreme Court in *Augusta,*" *id.* at 1467, and that "St. Francis alleges that the transformation of Blue Cross from a nonprofit insurer willing to contract with all interested hospitals into a for-profit insurer selectively contracting with certain hospitals has eliminated any benefit that nonassignability clauses may have held as cost containment measures," *id.*