**In re Dorothy Jean FISHER, Debtor.**

**J. Michael MORRIS, Trustee, Plaintiff,**

v.

**ST. JOSEPH MEDICAL CENTER, INC., Defendant.**

Bankruptcy No. 93–12224–7.
Adv. No. 95–5055.

United States Bankruptcy Court,
D. Kansas.

March 29, 1996.

Charles M. Cline, Wichita, KS, for Debtor.

J. Michael Morris, Trustee, Wichita, KS.

*MEMORANDUM OPINION AND ORDER*

JULIE A. ROBINSON, Bankruptcy Judge.

This matter comes before the Court pursuant to the Trustee's Complaint to Avoid and Recover Preferential and/or Post–Petition Transfers. A hearing was held on May 8, 1995. Upon the subsequent filing of stipulations and briefs, the Court took the matter under advisement.

### *JURISDICTION*

The Court has jurisdiction over this proceeding. 28 U.S.C. § 1334. This is a core proceeding. 28 U.S.C. § 157(b)(2)(E) and (F).

### *FINDINGS OF FACT*

Based on the parties' stipulations and the stipulated exhibits, the Court makes the following determinations of fact.

Dorothy Jean Fisher ("Debtor") received medical and hospital services from the defendant, St. Joseph Medical Center, Inc. ("St. Joseph"), on at least two occasions, namely between January 28 and February 5, 1993, and between July 23 and August 2, 1993. Upon admission to St. Joseph on January 28, 1993, Debtor signed an admission sheet which assigned to St. Joseph "any medical benefits arising out of any policy of insurance insuring the patient or any other person liable for the patient's care to be applied to the charges for services rendered."

At all times relevant to the supplying of medical and hospital services by St. Joseph to Debtor, Debtor held health insurance from Blue Cross and Blue Shield ("BC–BS"). Debtor's contract of insurance with BC–BS provided for payments as follows:

**D. Payment of Claims.** For covered services received from the following providers:

. . . .

**2. Contracting Providers of Blue Cross and Blue Shield of Kansas for limited services:**

When You receive services for which the provider is contracting, Your benefits will be paid directly to the Contracting Provider.

When You receive services for which the provider is not contracting Your benefits will be paid directly to You. *Such benefits are personal to You and cannot be assigned to any other person or entity.*

(Stipulations of Fact, Exhibit F, p. 22, *emphasis added* ).

St. Joseph is a "contracting hospital" under the terms of coverage of BC–BS insureds only with respect to "covered services" and is considered a non-contracting hospital for all other services in terms of coverage and modality of reimbursement. The services provided by St. Joseph to Debtor during the above referenced visits were not "covered services" under the St. Joseph/BC–BS contract, meaning the "benefits" were payable to the insured.

On April 13, 1993, BC–BS issued a check to Debtor in the amount of $4,108.32. This check was to cover services rendered by St. Joseph to the debtor between the dates of January 28, 1993 through February 5, 1993. On April 26, 1993, Debtor deposited $4,068.32 of such check in her bank account at Union National Bank ("UNB").

On July 23, 1993, St. Joseph filed suit against Debtor in Case No. 93 C 1821 in the District Court of Sedgwick County, Kansas. This suit was for the existing indebtedness for medical and hospital services previously provided to Debtor. On August 4, 1993, St. Joseph requested prejudgment garnishment against UNB and on or about that same date an Order of Prejudgment Garnishment was issued. On August 12, 1993, UNB filed its Answer indicating it held $3,300.52. St. Joseph also obtained prejudgment garnishment on BC–BS by order served on or about August 24, 1993. BC–BS filed an Answer on August 25, 1993, indicating it held $5,497.23 and forwarded this amount to the Clerk along with the Answer. The amount of $5,497.23 was for services rendered by St. Joseph to the debtor from July 23, 1993 through August 2, 1993.

Debtor filed a Chapter 7 bankruptcy on August 30, 1993. Relief from the automatic stay was not obtained at any time. On August 31, 1993, an Order to Pay–In was entered and UNB paid $3,300.52 into the court for the benefit of St. Joseph. St. Joseph obtained a default judgment against Debtor on September 3, 1993. St. Joseph received the § 341 notice of the bankruptcy filing on September 4, 1993. On April 23, 1994, St. Joseph obtained an Order to Pay–In directing BC–BS to pay to the Clerk the $5,497.23 on behalf of St. Joseph.

Debtor was discharged on April 26, 1994. On February 22, 1995, J. Michael Morris ("Trustee") filed a Complaint to Avoid and Recover Preferential and/or Post–Petition Transfers. The Trustee also seeks damages for possible violations of the automatic stay pursuant to 11 U.S.C. § 362.

### CONCLUSIONS OF LAW

The trustee seeks to avoid the garnishment of the Debtor's bank account and the garnishment of BC–BS as preferential transfers pursuant to 11 U.S.C. § 547(b), or as post-petition transfers pursuant to 11 U.S.C. § 549. The Bankruptcy Code provides that:

... the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition;

....; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). With regard to post-petition transfers, the Bankruptcy Code provides that:

(a) ... the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2)(A) that is authorized only under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

11 U.S.C. § 549(a).

It appears that the garnishments may involve both pre-petition and post-petition transfers, thus invoking the provisions of both § 547 and § 549. St. Joseph obtained a lien on the garnished funds pre-petition, which would constitute a transfer for purposes of § 547. *See* 11 U.S.C. §§ 101(54) and 547(e). Pursuant to Kansas law, St. Joseph's garnishment lien attached at the time of the service of the order of garnishment. *See In re Boden,* 61 B.R. 329, 331 (Bankr.D.Kan.1986); *In re Grant,* Case No. 89–10362 (Bankr.D.Kan. March 5, 1990) (citing *R.T. Davis Mill Co. v. Bangs,* 6 Kan.App. 38, 49 P. 628 (1897)). In addition, post-petition transfers were made when the funds were transferred post-petition pursuant to the Orders to Pay–In.

With regard to the elements of § 547 and § 549, St. Joseph disputes both that the garnishments were transfers of an interest of the Debtor in property, and that the transfers enabled the creditor to receive more than it would have received if the case were a case under Chapter 7, the transfers had not been made, and the creditor received payment of its debt to the extent provided by the provisions of Title 11. St. Joseph argues that if the transfer was not of an interest of the Debtor in property, then of necessity, the creditor could not have received more than it would have received if the transfer had not been made, because if the property was not property of the Debtor, then St. Joseph could have proceeded against the property regardless of the filing of the bankruptcy petition. Both of St. Joseph's arguments rely on a finding that the property was not property of the Debtor. Therefore, the Court will address that issue.

 The Court must determine whether the transfers involved "an interest of the debtor in property" for purposes of § 547, or "a transfer of property of the estate" for purposes of § 549. The Bankruptcy Code does not define "property of the debtor" for purposes of § 547. However, it "is best understood as that property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." *Begier v. IRS,* 496 U.S. 53, 58, 110 S.Ct. 2258, 2263, 110 L.Ed.2d 46 (1990). Courts must look to § 541, which delineates the scope of "property of the estate." *Id.* at 59, 110 S.Ct. at 2263.

 Section 541 defines property of the estate to include "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Clearly, the Debtor's rights under her contract with BC–BS and her right to receive benefits thereunder would be property of the estate absent a valid assignment of those rights. *See, e.g., Matter of Edgeworth,* 993 F.2d 51, 55–56 (5th Cir.1993); *In re Donham,* No. 92–13795, slip. op. at 8–9 (Bankr.D.Kan. June 29, 1995). The fact that St. Joseph obtained a pre-petition garnishment lien does not preclude the Debtor's interest from becoming property of the estate. Property of the debtor in which a creditor has a security interest becomes property of the debtor's bankruptcy estate subject to the lien or encumbrance. A debtor's assets in the hands of the trustee are subject to all liens and encumbrances existing at the time of filing, which are not otherwise invalidated by law. *In re Granger,* 90 B.R. 298, 299 (Bankr.N.D.Ohio 1988). The very existence of § 362(d), and the need for the procedure it sets forth to allow secured creditors to obtain their collateral, refutes any argument that liened property is no longer property of the estate and subject to the automatic stay. *In re Interstate Motor Freight System, IMFS, Inc.,* 86 B.R. 500, 504–05 (Bankr.W.D.Mich.1988).

St. Joseph argues that the insurance proceeds are not property of the estate because the Debtor assigned them to St. Joseph upon admission to the hospital. In addition, St. Joseph argues that Debtor's failure to remit the proceeds which were deposited in Debtor's UNB bank account constituted conversion, and St. Joseph is entitled to a constructive trust on those proceeds. In support of this argument, St. Joseph cites the following:

> An act of dominion by the assignor over the thing assigned to deprive the assignee of title or right to possession is a conver-

sion for which the assignor may be held liable. If the assignor proceeds to collect the sum due on an assigned chose, the moneys so coming into his hands are regarded as trust funds belonging to the assignee, who may recover the same either in an action for money had or received or in tort for conversion.

*Patrons State Bank & Trust Co. v. Shapiro,* 215 Kan. 856, 861, 528 P.2d 1198 (citation omitted) (1974). Both of St. Joseph's arguments rely on a determination that the assignment from Debtor to St. Joseph was valid, which depends on the validity of the nonassignment clause in the BC–BS contract.

■ The Court finds that the assignment was invalid. The contract between BC–BS and the Debtor provided that the benefits could not be assigned and were personal to the Debtor. This nonassignment clause in BC–BS contracts has been upheld by the courts. *See Augusta Medical Complex v. Blue Cross,* 230 Kan. 361, 634 P.2d 1123 (1981); *St. Francis Regional Medical Center v. Blue Cross,* 810 F.Supp. 1209 (D.Kan. 1992), *aff'd* 49 F.3d 1460 (10th Cir.1995).

St. Joseph claims that these cases stand for the proposition that BC–BS is statutorily[1] authorized to ignore the assignment, meaning BC–BS did not have to make insurance payments directly to the hospital; however, the assignment is valid between the Debtor and St. Joseph. Although the contract between BC–BS and Debtor clearly stated that the insurance proceeds were not assignable, St. Joseph further alleges that because it is not a party to the contract between BC–BS, it is not bound by its language.

Originally, BC–BS enjoyed a unique status as a nonprofit insurer and operated under a statutory mandate to control health care costs. *St. Francis,* 49 F.3d at 1462 (citing K.S.A. 40–19c10(c)). Pursuant to that mandate, BC–BS utilized the non-assignment clauses to encourage providers of medical services to contract with BC–BS and to submit to its cost control policies. *Id.* By collecting their payments directly from BC–BS, providers could avoid the risk of delayed payment or nonpayment that arises when providers must collect directly from patients. *Id.* The courts determined that the vital public interest in health care cost containment, in conjunction with the interest in freedom to contract, outweighed the freedom to assign a chose in action. *Id.* at 1467 (citing *Augusta,* 634 P.2d at 1125–27). Although BC–BS is now a for-profit health insurer rather than a state-affiliated non-profit insurer, and no longer operating under a statutory mandate to control health care costs or empowered by statute to undertake measures to implement that mandate, the Tenth Circuit has held that the balance struck in *Augusta* still retains sufficient merit to narrowly defeat the arguments against the non-assignment clause. *Id.* at 1467–68. Without evidence from the legislature or the Kansas courts that the public policy interests weighed in these cases has changed, this Court will follow their rulings.

■ Although St. Joseph argues that because it is not a party to the contract between BC–BS, it is not bound by its language, St. Joseph has cited no authority for the proposition that its assignment is still valid with respect to the Debtor. The court in *Patrons* noted that "[t]he Kansas cases clearly state the rule to be that an assignment passes all of the assignor's title or interest to the assignee, and divests the as-

---

1. The statute referred to is K.S.A. 40–19c06(b), which provides that:

 (b) Every subscription agreement entered into by any such corporation with any subscriber shall be in writing and a certificate stating the terms and conditions shall be furnished to the subscriber to be kept by the subscriber. No such certificate form shall be made, issued or delivered in this state unless it contains the following provisions:

 . . . .

 (7) if applicable, a statement of the kind of hospital in which the subscriber may receive benefits

and the types of benefits to which the subscriber may be entitled to in such kinds of hospitals. The subscriber shall be entitled to benefits in any non-participating hospital in Kansas which is licensed by the secretary of health and environment and in which the average length of stay of patient is similar to the average length of stay in participating hospitals. *The agreements issued by any corporation currently or previously organized under this act may include provisions allowing for direct payment of benefits only to contracting health care providers.*

K.S.A. 40–19c06(b) (emphasis added).

signor of all right of control over the subject matter of the assignment." *Patrons State Bank & Trust Co. v. Shapiro,* 215 Kan. 856, 861, 528 P.2d 1198 (1974). The assignments were invalid because they cannot, pursuant to Kansas statutory and case law, pass all of the assignor's title or interest to the assignee. Pursuant to Kansas law, St. Joseph is not entitled to receive the Debtor's right to receive the insurance proceeds. If the Debtor is prohibited from assigning her right to receive payments, she cannot "pass all of her title or interest to the assignee, and divest herself of all right of control over the subject matter of the assignment." Clearly, Debtor retained an interest in the insurance proceeds. Furthermore, it would appear that the Debtor must have had some interest in the funds in order to enable St. Joseph to garnish the funds. A garnishment is an action ancillary to an underlying action to attach property of the principal debtor held by the garnishee. By bringing such an action, St. Joseph was asserting that the money held by UNB and BC–BS was property of the debtor. *See, Ard v. Pratt,* 61 Kan. 775, 776–77, 60 P. 1048 (1900) (noting that one who causes an execution to be levied on land as the property of another necessarily affirms that such other has a saleable interest in the land, and will not be heard to deny such ownership).

In light of the cases holding that the nonassignment clause is valid, the Court finds that the assignment in the present case was ineffective to transfer actual rights so as to remove the insurance proceeds from the property of the estate. Therefore, the garnishments involved transfers of property of the estate.

■ Because the Court finds that the assignment from Debtor to St. Joseph was invalid, St. Joseph's argument for imposition of a constructive trust, which relied on a determination that the assignment was valid, must likewise fail. The Court is aware of commentary that could be interpreted as suggesting that the proceeds may be held in trust without a valid assignment. Collier on Bankruptcy contains the following statement respecting property of the estate:

Section 541 will not apply in those instances where property which ostensibly belongs to the debtor is, in reality, held by the debtor in trust for another. For example, if the debtor has incurred medical bills that were covered by insurance and the insurance company had sent payment of the bills to the debtor before the debtor had paid the bill for which the payment was reimbursement, the payment would actually be held in constructive trust for the person to whom the bill was owed. The payment would not, therefore, become property of the estate pursuant to section 541.

4 *Collier on Bankruptcy* ¶ 541.01. In noting that this quotation relies upon language contained in the legislative history to § 541, the court in *In re Moskowitz,* 13 B.R. 357, 360–61 (Bankr.S.D.N.Y.1981), *appeal denied* 14 B.R. 307 (D.C.N.Y.1981) (emphasis added), stated that:

While under certain circumstances the quotation from *Collier on Bankruptcy* may be correct, the language is too broad because it assumes certain unexpressed facts. If the facts reveal that the debtors previously assigned the insurance proceeds to New York Hospital then, of course, any payment to the debtors might be held by them in a fiduciary capacity and under a constructive trust so as not to constitute property of the estate. [citations omitted] Whether or not a trust will be imposed in a bankruptcy proceeding is governed by state law. [citations omitted] *Absent any assignment of the proceeds by the debtors or any designation that the medical insurance proceeds should be paid directly to New York Hospital, or some additional facts as would support a constructive trust under applicable state law. this court would be hard pressed to accept the categorical statement in Collier on Bankruptcy that medical insurance proceeds received by a debtor before the debtor paid the medical bill "would actually be held in constructive trust for the person to whom the bill was owed."*

This Court agrees with the language in *Moskowitz,* and finds that in this case there is no valid assignment or other contractual

right in St. Joseph to be paid directly by BC–BS, therefore the facts do not support a finding for imposition of a constructive trust. Furthermore, it would appear that St. Joseph elected its remedy when it sued the Debtor for moneys owed and not for imposition of a constructive trust. *See, e.g.,* 25 Am.Jur.2d *Election of Remedies* § 25 (1996) (stating that "[a] person who has a right to impress a trust upon property due to fraud or some other reason may have an election of remedies … an action for damages for the fraud or a suit to impress the trust … if an action for damages is brought and a general judgment obtained, there is no right to follow the trust property thereafter"); *Ireland v. Waymire,* 107 Kan. 384, 385–87, 191 P. 304 (1920) (where property is wrongfully obtained from the owner by another and converted to his own use, the former owner has two remedies open to him, one to treat the title as having passed, and sue for its value, and the other to sue for the recovery of the specific property, and when, with knowledge of the facts, he sues for the value of the property converted, the elections complete, and the other remedy is no longer available to him).

■■■ The Trustee claims that St. Joseph violated the automatic stay and that the Trustee is entitled to costs and attorney's fees. Section 362(h) provides that "[a]n individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C. § 362(h). It is clear from the record that St. Joseph has violated the automatic stay. St. Joseph obtained Orders to Pay–In for both garnishments post-petition. Continuation of a garnishment proceeding violates the automatic stay. *In re Gray,* 97 B.R. 930, 935 (Bankr.N.D.Ill.1989) (citations omitted). Some courts have found that creditors have an affirmative obligation to terminate or stay garnishment proceedings upon learning of the judgment debtor's bankruptcy. *Id.* at 934 (citations omitted). In *In re Zunich,* 88 B.R. 721, 723–24 (Bankr.W.D.Pa.1988), the creditor argued that the receipt and deposit of the cashier's check from the garnishee did not constitute a continuation of the garnish-ment proceedings or an action to collect, assess or recover a claim. The court in *Zunich* held that the actions by the creditor in depositing and withholding the garnished funds were a violation of the automatic stay, unless they fall within a specific exception. *Id.* at 725. In *In re Hellums,* 772 F.2d 379, 381 (7th Cir.1985), the court also noted that Congress intended the stay of § 362(a)(6) to apply to the automatic (as well as coerced) transfer and application of post-petition funds to the pre-petition debts of Chapter 7 debtors. The Court therefore finds that St. Joseph violated the automatic stay imposed by 11 U.S.C. § 362(a).

■■■ Whether the trustee is entitled to costs and attorney's fees depends on whether there was a willful violation. A willful violation is one where the defendant has knowledge of the automatic stay yet intentionally takes actions which violate the automatic stay. *In re Bloom,* 875 F.2d 224, 227 (9th Cir.1989) (citation omitted).

■■■ The Court finds that there was no willful violation regarding the UNB garnishment. The Order to Pay–In as to the UNB garnishment was obtained the day after the bankruptcy was filed, but before St. Joseph had knowledge of the bankruptcy. The BC–BS garnishment, however, was a willful violation of the stay. The Order to Pay–In as to the BC–BS garnishment was obtained on April 23, 1994, almost eight months after the bankruptcy was filed. St. Joseph undoubtedly had notice of the bankruptcy and continued to take actions against property of the debtor. St. Joseph argues that no violation occurred because the garnishments were not against property of the estate. The Court has already held that the garnishments were against property of the estate, and in any event "[w]hether the party believes in good faith that it had a right to the property is not relevant to whether the act was 'willful' or whether compensation must be awarded." *Id.; See also In re Lansdale Family Restaurants, Inc.,* 977 F.2d 826, 829 (3rd Cir.1992) (citations omitted) (noting that a creditor's good faith belief that he is not violating the automatic stay is not determinative of willfulness); *In re Price,* 42 F.3d

1068, 1071 (7th Cir.1994) (holding that a willful violation does not require specific intent to violate the automatic stay); *In re Gray,* 97 B.R. 930, 936 (Bankr.N.D.Ill.1989) (noting that a creditor's violation of the stay may be willful even if the creditor believed itself justified in taking an action found to be violative of the stay, and that "[w]here there is uncertainty regarding the appropriate action with respect to a debt, the creditor should seek an adjudication in the bankruptcy court").

 After the pleadings and briefs were filed in this case, St. Joseph brought the case of *In re Pace,* 56 F.3d 1170 (9th Cir.1995) to the Court's attention, and argues that the Trustee is not an "individual" entitled to damages under § 362(h). The Trustee objects to St. Joseph raising the issue at this time. The timeliness issue is irrelevant, however, because the Court declines to follow *In re Pace.* The opinion in *Pace* notes that two of the leading bankruptcy treatises hint that "individual" in this context should not be read so narrowly as to preclude either trustees or their counterparts, and that many of the reported decisions point in favor of treating trustees as individuals. *Pace,* 56 F.3d at 1175 (citations omitted), *amended and superseded* 67 F.3d 187 (1995). The court in *Pace* disregards these opposing views, and finds that the harm is suffered by the bankruptcy estate, not the trustee as a natural person. This Court agrees with the opposing views expressed in *Pace,* and finds that the term "individual" in § 362(h) includes trustees incurring damages on behalf of the estate. Where the statute's language is plain, "the sole function of the courts is to enforce it according to its terms." *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989) (citations omitted). The term "individual" has been defined as including, in proper cases, artificial persons. *Black's Law Dictionary* 773 (6th ed. 1990). The Court finds that this is a proper case in which "individual" should include the trustee on behalf of the bankruptcy estate.

The Court finds that the UNB garnishment was not a willful violation of the automatic stay, but that the BC–BS garnishment,

obtained eights months after the bankruptcy petition, constituted a willful violation. St. Joseph argues that because the Trustee would have had to bring an action on the garnishment that he admits is not "willful," he is not harmed nor the estate prejudiced in any manner. In light of this argument, the Court finds that the Trustee is entitled to half of his costs and attorney's fees and directs the Trustee to provide an itemized fee statement to the Court.

**IT IS THEREFORE ORDERED BY THE COURT** that the Trustee shall be granted judgment on his Complaint to Avoid and Recover Preferential and/or Post–Petition Transfers.

**IT IS FURTHER ORDERED BY THE COURT** that St. Joseph Medical Center, Inc., willfully violated that automatic stay, and the Trustee is entitled to half of his attorney's fees and costs in bringing this action. The Court directs the Trustee to provide an itemized fee statement to the Court.

This Memorandum shall constitute findings of fact and conclusions of law under Rule 7052 of the Federal Rules of Bankruptcy Procedure and Rule 52(a) of the Federal Rules of Civil Procedure. A judgment based on this ruling will be entered on a separate document as required by Rule 9021 of the Federal Rules of Bankruptcy Procedure and Rule 58 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.