**VIA CHRISTI REGIONAL MEDICAL CENTER, INC., Chance Industries Inc., the Chance Industries, Inc. Employee Benefit Plan, and Cecillia Arnold Plaintiffs,**

v.

**BLUE CROSS AND BLUE SHIELD OF KANSAS, INC., Defendant.**

No. 04–1253–WEB.

United States District Court, D. Kansas.

March 3, 2005.

Joseph H. Cassell, W. Thomas Gilman, Redmond & Nazar, L.L.P., Wichita, KS, for Plaintiffs.

Alan L. Rupe, Stacia G. Boden, Kutak Rock, LLP, Wichita, KS, Scott H. Raymond, Blue Cross and Blue Shield of Kansas, Inc., Topeka, KS, Tory M. Bishop, Kutak Rock LLP, Omaha, NE, for Defendant.

## MEMORANDUM AND ORDER

WESLEY E. BROWN, Senior District Judge.

Now before the Court is Defendant's motion to dismiss under Fed.R.Civ.P. 12(b)(1) lack of jurisdiction over subject matter and Fed.R.Civ.P. 12(b)(6), failure to state a claim upon which relief can be granted. Plaintiffs assert jurisdiction un-

der 28 U.S.C. § 1331, 29 U.S.C. § 1132(e)(1), and 28 U.S.C. § 1367. This case consisted originally of two distinct actions as Arnold filed suit against BCBS separately from the other Plaintiffs; however, the two cases were consolidated. (Doc. 24).

## I Nature of the Case

Plaintiff Chance Company (Chance) had a self insured plan and a stop loss policy with Blue Cross & Blue Shield (BCBS) which protected Chance and the Chance Benefit Plan (Plan) from claims exceeding $50,000. On October 17, 2001, Cecillia Arnold (Arnold) was pregnant and having labor signs and was admitted to Via Christi Regional Medical Center (Via Christi). Arnold had a child, Haskins, who required extensive medical care. Haskins is eligible for medical benefits as the grandson of Arnold King (King), an employee of Company and a participant in the plan. Upon Arnold's admission to Via Christi, Albert Arnold as the father of Haskins, executed an admission consent agreement where he assigned to Via Christi any and all medical benefits payable from any policy of insurance. The total amount due to Via Christi for Haskins' care was $647,996.26. Company later changed the plan from a self insured to a fully insured plan and canceled the stop loss policy. Company then received notice that a claim was due for the expensive treatment given to Haskins. The Plan is unable to pay the amount due for Haskins' medical care.

Plaintiffs argue that BCBS breached its fiduciary duty by failing to advise them that this claim was outstanding before Company cancelled the stop loss policy. Via Christi claims damages under the theory of promissory estoppel because BCBS represented that benefits were available for Haskins' treatment.

BCBS argues that neither Chance nor the Plan is a fiduciary; therefore, under ERISA, the Court is without subject matter jurisdiction. BCBS also maintains that Via Christi does not have a valid assignment and that ERISA preempts Via Christi's promissory estoppel claim. Finally BCBS asserts that none of the Plaintiffs have suffered a compensable injury

## II. Motion to Dismiss Standards

■ The Court can exercise jurisdiction only when specifically authorized to do so. *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir.1994). Having invoked the jurisdiction of the federal courts, it is the plaintiff's burden to demonstrate that jurisdiction is proper. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Scheideman v. Shawnee County Bd. of County Comm'rs*, 895 F.Supp. 279, 281 (D.Kan.1995).

"Rule 12(b)(1) motions generally take one of two forms. First, a moving party may make a facial attack on the complaint's allegations as to the existence of subject matter jurisdiction. In reviewing a facial attack, the district court must accept the allegations in the complaint as true. Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction is based." *Stuart v. Colorado Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir.2001) (internal citations omitted); *Jensen v. Johnson County Youth Baseball League*, 838 F.Supp. 1437, 1440 (D.Kan.1993). A court has wide discretion to allow affidavits and other documents to resolve disputed jurisdictional facts. *Wheeler v. Hurdman*, 825 F.2d 257,

259 (10th. Cir.1987); see also *Sizova v. Nat'l Inst. of Stds. & Tech.,* 282 F.3d 1320 (10th Cir.2002).

■■■ "However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case." *Holt v. United States,* 46 F.3d 1000, 1003 (10th Cir.1995) citing *Wheeler,* 825 F.2d at 259. Subject matter jurisdiction and the merits are considered to be intertwined when subject matter jurisdiction is dependent upon the same statute which provides the substantive claim in the case. *Id.* "Under *Wheeler,* however, the focus of the inquiry is not merely on whether the merits and the jurisdictional issue arise under the same statute. Rather the underlying issue is whether resolution of the jurisdictional question requires resolution of an aspect of the substantive claim." *Pringle v. United States,* 208 F.3d 1220, 1223 (10th Cir.2000).

A determination of whether Chance and the Chance Plan are fiduciaries within the meaning of ERISA is both a jurisdictional question and an aspect of the substantive claim. See *Wheeler,* 825 F.2d at 259. A ruling that these entities are not fiduciaries would effectively be a ruling on the merits as they would not be able to raise their claim under ERISA.

The Court will use the standards under Rule 12(b)(6) to analyze BCBS's motion. Generally a Court does not look beyond the face of a complaint when analyzing a Rule 12(b)(6) motion; however, "it is accepted practice, if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss." *MacArthur v. San Juan County,* 309 F.3d 1216, 1221 (10th Cir.2002) quoting *Dean Witter Reynolds, Inc. v. Howsam,* 261 F.3d 956, 961 (10th Cir. 2001).

BCBS has provided a signed copy of the Administrative Agreement and plaintiffs do not challenge its authenticity. (Def.Ex. 1). Plaintiffs quote from the Administrative Agreement in the complaint and the agreement establishes the contractual relationship between BCBS and Company. Accordingly, the Court will use this document when evaluating this motion.

"A motion to dismiss is appropriate when the plaintiff can prove no set of facts in support of the claims that would entitle plaintiff to relief." *Roman v. Cessna Aircraft Co.,* 55 F.3d 542, 543 (10th Cir.1995). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Sutton v. Utah State School for the Deaf & Blind,* 173 F.3d 1226, 1236 (10th Cir.1999) quoting *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir.1991). Furthermore, all well-pleaded factual allegations in the complaint are accepted as true and viewed in the light most favorable to the nonmoving party. *Robbins v. Wilkie,* 300 F.3d 1208, 1210–1211 (10th Cir.2002).

### III. Standing analysis

### A. Chance Industries, Inc. (Company)

Company asserts it has standing to bring this action as a fiduciary pursuant to 29 U.S.C. § 1132(a) and 29 U.S.C. § 1109. While there is little support for Company's

status as a fiduciary in the pleading, Company argues in greater detail in its brief that it retained some discretionary control over the plan, including:

1). Company was the named Plan Administrator. (Def. ex. 1 ¶ 2).

2). BCBS agreed to perform specific services at the direction of Company. (*Id.* ¶ 5).

3). BCBS was to advise Company with respect to claims procedures and assist with implementation of procedures including those for submission of claims. (*Id.* ¶ 5G).

4). Company was to provide BCBS with the list of eligible participants and was required to keep BCBS informed of changes in employment status that affected eligibility. (*Id.* ¶ 9).

5). Company was to notify BCBS of participants who become eligible for COBRA benefits. (*Id.* ¶ 10(A)(1)).

6). Company and BCBS could terminate the agreement at any time with 60 days notice. (*Id.* ¶ 18).

7). In the event of termination of the agreement, Company would assume control over the administration of the Plan. (*Id.* ¶ 19).

However, under the agreement, BCBS had substantial discretionary authority.

Plan administrator hereby expressly delegates its authority to [BCBS] to perform the services and provide the supplies, forms and materials set forth in this Agreement in connection with the administration and operation of the Benefit Plan. To the extent that in discharge of its duties [BCBS] is performing the functions of a fiduciary as defined in Section [29 U.S.C. § 1002(21)(A)] of ERISA...[BCBS] agrees to perform the following services...

. . . . .

All claims for benefit payments shall be made on forms satisfactory to [BCBS]. [BCBS] shall, at its own expense, design, produce and provide claims and administrative forms to Plan Administrator for the use of Benefit Plan participants.

Process claims and exercise full discretionary authority in construing benefits for claims submitted and determine the amount of benefits for which Benefit Plan participants are eligible in accordance with the terms and provisions of the Benefit Plan. This construction of benefits for claims shall be the exclusive responsibility of [BCBS] . . .

. . . . .

[BCBS] shall have discretionary authority and fiduciary responsibility for provision of full and fair review of claims, claim denials and appeals thereof pursuant to Section 503 of ERISA,...Final determination of payment or denial of claims or of appealed claims shall be made by [BCBS]...(Def. Ex. 1 at ¶ 5G, H, N).

Both parties agreed to the authenticity of Defendant's exhibit 1, Agreement to Provide Administrative Services for a Self–Funded Health Benefit Plan; therefore, the above provisions describing the obligations and responsibilities of the parties are not in dispute. Where the facts are not in question, the determination of whether a party is an ERISA fiduciary is purely a question of law. *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1458 (9th Cir. 1995); *LoPresti v. Terwilliger*, 126 F.3d 34, 39 (2d Cir.1997).

"ERISA carefully enumerates the parties entitled to seek relief under [§ 1132]; it does not provide anyone other than participants, beneficiaries, or fiduciaries with an express cause of action..." *Franchise Tax Board v. Constr. Laborers Vacation Trust*, 463 U.S. 1, 27, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); 29 U.S.C. § 1132(a).

Under ERISA a party is a fiduciary "to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A).

It is generally recognized that employers can also be a fiduciaries. *U.S. Steel Corp. v. Com. Pa. Human Rels. Comm'n*, 669 F.2d 124, 128 (3d Cir.1982); *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1465 (4th Cir.1996). "ERISA permits employers to wear two hats, and ... they assume fiduciary status only when and to the extent that they function in their capacity as plan administrators, not when they conduct business that is not regulated by ERISA." *Belade v. ITT Corp.*, 909 F.2d 736, 738 (2d Cir.1990).

Company's responsibilities under the Agreement are narrow and administrative in nature. The Company is named plan administrator, however, "[w]hether or not an individual or entity is an ERISA fiduciary must be determined by focusing on the function performed, rather than on the title held." *Blatt v. Marshall & Lassman*, 812 F.2d 810, 812 (2d Cir.1987). Company cannot claim fiduciary status merely because it provided information to BCBS regarding the eligibility of plan participants to receive benefits. This does not qualify as discretionary control over claims but rather a ministerial or administrative duty necessary for BCBS to carry out its work. *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1325 (9th Cir.1985) (No fiduciary status when employer performs only administrative functions); *Baker v. Big Star Div. of Grand Union Co.*, 893 F.2d 288, 290 (11th Cir.1989) (a plan administrator who merely performs claims processing, investigatory, and record keeping duties is not a fiduciary) (citations and quotations omitted); *Confer v. Custom Engineering Co.*, 952 F.2d 34, 39 (3d Cir. 1991); see also 29 C.F.R. § 2509.75–8.

Company's argument that it is a fiduciary because it had the ability to terminate BCBS's status as a fiduciary is also unpersuasive. It is generally recognized that if an employer retains some fiduciary responsibilities, ERISA only permits the employer to sue under ERISA for a cause of action related to the fiduciary responsibility. *Sonoco Prods. Co. v. Physicians Health Plan, Inc.*, 338 F.3d 366, 372 (4th Cir.2003); *Gelardi*, 761 F.2d at 1325; see also 29 C.F.R. § 2509.75–8(D–4). Company's complaint relates not to their selection or termination of BCBS as a fiduciary but omissions by BCBS when Company canceled the stop loss insurance policy.

"Plan sponsors who alter the terms of a plan do not fall into the category of fiduciaries...employers or other plan sponsors are generally free under ERISA, for any reason at any time to adopt, modify, or terminate welfare plans. When employers undertake those actions they do not act as fiduciaries, but are analogous to the settlors of a trust." *Hughes Aircraft*

*Co. v. Jacobson,* 525 U.S. 432, 443, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999) quoting *Lockheed Corp. v. Spink,* 517 U.S. 882, 890, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996); 29 U.S.C. § 1002(16)(B) (An employer that establishes or maintains an employee benefit plan is a sponsor). Even though Company retained a narrow discretionary function in being able to choose the fiduciary, the decision to change plans was a business decision unrelated to Company's narrow fiduciary role. See *Sweeney v. Kroger,* 773 F.Supp. 1266, 1269 (E.D.Mo. 1991) (If employer acts as a settlor, his conduct as to business decisions in implementing the plan are not regulated by the fiduciary duties outlined in ERISA).

■ Company claims it is a fiduciary because it would assume the role of fiduciary upon a termination of the Agreement. However, the Agreement was still in effect when the alleged breach of fiduciary duty occurred; therefore, Company had not assumed BCBS's fiduciary role. See *McDermott Food Brokers v. Kessler,* 899 F.Supp. 928, 932 (N.D.N.Y.1995) (Employer no longer a fiduciary once a third party replaced employer as plan administrator after contract went into effect).

■ Additionally, the Agreement clearly states that Company delegated all of its authority as plan administrator to BCBS. (Def. Ex. 1 ¶¶ 5, 5H). Once an employer delegates control over a welfare benefits plan, it is no longer a fiduciary because it retains no discretionary control over the disposition of claims. *Gelardi,* 761 F.2d at 1325; *Eureka Paper Box Co. v. WBMA, Inc., Voluntary Employee Benefit Trust,* 767 F.Supp. 642, 651 (M.D.Pa.1991).

Company cites *Hope Ctr., Inc. v. Well Am. Group, Inc.,* 196 F.Supp.2d 1243 (S.D.Fla.2002) as persuasive authority in its argument that it is a fiduciary under ERISA. In *Hope,* the third party administrator failed to use plan assets to pay provider claims and failed to notify participants and beneficiaries of the plan's financial problems. *Hope,* 196 F.Supp.2d at 1249. The defendant argued that *Hope,* as an employer, was not a fiduciary. The court found differently stating:

> Plaintiff details various types of conduct in support of its claim that it is a Plan fiduciary. First, Plaintiff claims it exercised its fiduciary duty in engaging WAG. Second, in permitting WAG to thereafter appoint SMA as a third-party administrator. Third, in its right to terminate the Plan for cause. Fourth, because it was responsible for providing employees with forms and information about the plan. Fifth, by actively assisting employees who were experiencing problems with their coverage under the plan. Sixth, because it maintained a file of all unpaid claims and called complaining providers on behalf of Plan beneficiaries. Seventh, by virtue of its efforts on behalf of beneficiaries to obtain claims itemizations from the providers and forward [them] to WAG for processing. And finally, in terminating the Plan upon learning that WAG was under investigation by the State of Florida. *Id.* at 1247–1248.

Company argues that a motion to dismiss would be premature because further discovery is needed to determine if Company was engaged in any of the activities that the court relied on in *Hope.* While the argument that discovery is needed from BCBS for Company to uncover its own activities with respect to the Plan seems dubious, the Court need not inquire further because we do not find the reasoning in *Hope* persuasive.

As discussed earlier, conduct in the above passage labeled one through four and the final factor are settlor or administrative type functions that do not bestow upon an employer fiduciary status. Even if Company could show that it participated in conduct similar to factors five through seven, this would still not be enough to be a fiduciary. Assisting employees with problems, keeping track of unpaid claims and helping with claim processing are activities that succor participants and beneficiaries to resolve troublesome claims and do not constitute discretionary control over the administration or management of the plan or its assets. 29 U.S.C. § 1002(21)(A); see *Guardsmark, Inc. v. BlueCross & BlueShield*, 169 F.Supp.2d 794, 800 (W.D.Tenn.2001) (A person is a fiduciary if he interprets complex policies, applies elaborate rules, and makes judgments).

The Court holds that Company has provided or argued no set of facts which could show it was a fiduciary. While Company retained minor discretionary authority in the ability to terminate the agreement, the current suit does not implicate this; therefore, Company lacks standing to pursue its claim under ERISA and Company's claim must be dismissed.

### B. Chance Industries Inc., Employee Benefit Plan (Benefit Plan)

■ The Chance Benefit Plan states in the complaint that it asserts its claim under 29 U.S.C. § 1132(d)(1), which states "[a]n employee benefit plan may sue or be sued under this subchapter as an entity." BCBS argues that the Chance Benefit Plan does not have standing to sue under ERISA. Indeed, 29 U.S.C. § 1132(e)(1) states "the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter brought by the Secretary or by a participant, beneficiary, fiduciary...". 29 U.S.C. § 1132(e)(1)

There is a split in authority among the Circuits as to whether pension plans have standing under 29 U.S.C. § 1132(d)(1) to make an ERISA claim. *Pressroom Unions–Printers League Income Sec. Fund v. Continental Assurance Co.*, 700 F.2d 889, 893 (2d Cir.1983) (Holding that 1132(e)(1) does not authorize a plan to sue under ERISA); *Local 159 v. Nor–Cal Plumbing, Inc.*, 185 F.3d 978, 983 (9th Cir.1999) (Holding that 1132(d)(1) does not confer federal jurisdiction to plans bringing ERISA actions); *cf. Saramar Aluminum Co. v. Pension Plan for Employees of Aluminum Indus. & Allied Indus.*, 782 F.2d 577, 581 (6th Cir.1986) (Holding that a plan has standing because it necessarily includes those fiduciaries who administer and effectuate its policies); *Peoria Union Stock Yards Co. Retirement Plan v. Penn Mutual Life Insurance Co.*, 698 F.2d 320, 326 (7th Cir.1983) (ERISA confers upon pension plans standing to sue for breach of fiduciary obligations).

The Tenth Circuit has not addressed this particular issue but it has taken a narrow view of standing stating, "[a]lthough [ERISA] has a broad remedial purpose, only participants, beneficiaries, and fiduciaries of an employee benefit plan may avail themselves of its protections." *Mitchell v. Mobil Oil Corp.*, 896 F.2d 463, 473 (10th Cir.1990). Given this standing analysis, which does not mention benefit plans, the Court is of the opinion that the Tenth Circuit would find the language in *Pressroom Unions–Printers* as persuasive. "It is beyond dispute that only Congress is empowered to grant and extend the subject matter jurisdiction of the federal judi-

ciary, and that courts are not to infer a grant of jurisdiction absent a clear legislative mandate. We therefore decline to construe § 1132(d)(1) as *sub silentio* conferring jurisdiction over actions brought by parties other than those specified in § 1132(e)(1)". *Pressroom Unions–Printers League,* 700 F.2d at 892; see *Blue Cross & Blue Shield v. Bell,* 596 F.Supp. 1053, 1058 (D.Kan.1984) (Adopting *Pressroom Unions–Printers'* restrained view of standing to those listed in 29 U.S.C. § 1132(e)(1)). Therefore, the Court declines to grant standing to the Chance Benefit Plan to assert a claim under ERISA.

## C. *Via Christi as an Assignee*

Via Christi has asserted a breach of fiduciary duty against BCBS and claims it has standing to do so as an assignee of a beneficiary. BCBS argues that the Chance Benefit Plan prohibits assignments; therefore, the assignment is not valid and Via Christi has no standing to sue under ERISA.

While the Tenth Circuit has not directly addressed this issue, most circuits have held that health care providers, as assignees, have standing to sue under ERISA. *Cagle v. Bruner,* 112 F.3d 1510, 1515 (11th Cir.1997) (Neither section 1132(a) nor any other ERISA provision prevents derivative standing based upon an assignment of rights); *Kennedy v. Connecticut Gen. Life Ins. Co.,* 924 F.2d 698, 700 (7th Cir.1991); *Tango Transp. v. Healthcare Fin. Services LLC,* 322 F.3d 888, 892 (5th Cir.2003); *Misic v. Building Service Employees Health & Welfare Trust,* 789 F.2d 1374, 1377 (9th Cir.1986); see also *St. Francis Regional Medical Ctr. v. Blue Cross & Blue Shield,* 49 F.3d 1460, 1464 (10th Cir. 1995) (We interpret ERISA as leaving the assignability of benefits to the free negotiations and agreement of the contracting parties); *cf. Allergy Diagnostics Lab. v. Equitable,* 785 F.Supp. 523, 527 (W.D.Pa. 1991) (holding medical providers do not have standing to sue as assignees because not included in § 1132(a)).

■ The statutes covering ERISA support the majority position as ERISA specifically bars the assignment of pension plan benefits but is silent as to the assignability of insurance plan benefits. 29 U.S.C. § 1056(d)(1); *St. Francis,* 49 F.3d at 1464. The Court holds that ERISA does not prohibit plan participants or beneficiaries from assigning health care benefits under an insurance plan.

■ However, BCBS claims that even if health providers can have standing as an assignee, the no-assignment clause in the health care benefit plan invalidates Via Christi's assignment. Via Christi disputes the authenticity of defendant's exhibit two (the health care benefit plan); however, both parties cite the plan in their briefs and the Court will use it as an aid in deciding the motion. The following are relevant provisions of the Health Care Benefit Plan.

C. Contracting Provider means an Eligible Provider who has entered into a Contracting Provider Agreement with Blue Cross and Blue Shield of Kansas.

D. Eligible Provider means one of the following providers as long as the services provided are within the scope of the licensure of the provider and are covered services according to the provision of this Benefit Description....

6. Institutional Provider means a Hospital, Medical Care Facility...

L. Medical Emergency means a sudden and unexpected onset of a life

threatening medical condition, the symptoms of which are acute and of such severity as to require...immediate medical attention. The following conditions would qualify...

Complications of pregnancy and/or fetal distress, excluding false labor.

N. Non–Contracting Provider means an eligible provider who has not entered into a Contracting Provider Agreement with Blue Cross and Blue Shield of Kansas.

(Def. Ex. 2, at General Definitions, ¶¶ C, D, L, N).

B. Contracting Providers · of Blue Cross and Blue Shield of Kansas for limited services. In certain situations, Institutional Providers may be Contracting Providers for only a limited set of services, e.g., ... outpatient treatment of Medical Emergencies and Accidental Injuries. In such cases, such an Institutional Provider will be treated as a Contracting Provider for the purpose of acceptance of allowable charges established by the Plan as payment in full, and direct payment of benefits. For services other than the limited set of services identified above, these Institutional Providers will be considered Non–Contracting.

(*Id.* at Allowable Charges, ¶ B).

D. Payment of Claims. For covered services received from the following providers:

1. Contracting Provider of Blue Cross and Blue Shield for Kansas:

Your benefits will be paid directly to the Contracting Provider.

2. Contracting Providers of Blue Cross and Blue Shield of Kansas for limited services:

When you receive services for which the provider is contracting Your benefits will be paid directly to the Contracting Provider.

When You receive services for which the provider is not contracting Your benefits will be paid directly to You. Such benefits are personal to You and cannot be assigned to any other person or entity.

(*Id.* at General Information, ¶ D).

Via Christi does not dispute the validity of the no-assignment clause, rather, it argues that the no-assignment clause does not apply because they are a contracting provider. Via Christi claims the following

1. It is an institutional provider as defined in the plan.

2. Haskins' received treatment for a premature birth which falls under the definition of Medical Emergency.

3. Under Medical Emergency, Institutional Providers may be treated as Contracting Providers

4. The no-assignment clause only applies to non-contracting providers.

5. BCBS made a partial payment to Via Christi and not to the beneficiary. This shows that BCBS partially satisfied the claim using the procedures for contracting providers.

In response, BCBS cites a bankruptcy case which held a similar no-assignment clause invalidated an assignment to a health care provider. *Morris v. St. Joseph Medical Ctr.*, 194 B.R. 525 (Bkrtcy.D.Kan. 1996). Similar to the case *sub judice,* the health benefit plan in *Morris* prohibited non-contracting providers from receiving assignments. *Id.* at 527. *Morris* is distinguishable however, because the health care provider rendered services not covered under the contract; therefore, it was undis-

puted that the St. Joseph was not a contracting provider. *Id.* at 528.

In the present situation there are insufficient facts to show whether the care given to Haskins meets the definition of a Medical Emergency thereby converting Via Christ into a contracting provider and allowing for a valid assignment. See *Dallas County Hosp. Dist. v. Associates' Health & Welfare Plan,* 293 F.3d 282, 289 (5th Cir.2002) (Hospital was a network provider and met an exception to the anti-assignment clause in the plan). Viewing the facts in the complaint in the light most favorable to Via Christi, the Court finds that Via Christi has made a sufficient showing that it has standing as an assignee; hence, a motion to dismiss is inappropriate on this ground.

### D. Via Christi and Injury in Fact

 [T]he irreducible constitutional minimum of standing contains three elements. First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly...traceable' to the challenged action of the defendant.... Third it must be likely that the injury will be redressed by a favorable decision. *Lujan,* 504 U.S. at 560–561, 112 S.Ct. 2130 (internal citations and quotations omitted).

BCBS maintains that Plaintiffs do not have standing because they have suffered no injury. The Court will address this argument with respect to Via Christi in its capacity as an assignee asserting a breach of fiduciary claim. Specifically, Defendant argues that Via Christi, as an assignee of the beneficiary's rights, has not linked BCBS's actions to any injury suffered by the beneficiary.

Defendant's argument fails as Arnold's complaint shows a monetary injury. (Compl. ¶ 23 at case 04–1339, see consolidation order, Doc. 24). "As a result of the Plan's inability to [pay] said sum, Via Christi has made demand upon Arnold to pay $509,935.74. Arnold does not have $509,935.74 to pay Via Christi." (*Id.*) Arnold also links this monetary injury to actions allegedly perpetrated by BCBS. Allegedly all but $50,000 of the claim would have been paid by BCBS under the stop loss insurance policy; however, this policy was canceled because BCBS did not inform Company of Arnold's pending medical claim. (*Id.* ¶¶ 18, 21). Arnold's complaint adequately asserts an injury and links it to BCBS's alleged misconduct; therefore, Via Christi has standing to assert this injury as the assignee.

### IV. Via Christi's Promissory Estoppel Claim and Preemption

 With some exceptions, ERISA preempts state laws that "relate to any employment benefit plan". 29 U.S.C. § 1144(a); *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.,* 170 F.3d 985, 989 (10th Cir.1999). However, the Supreme Court has acknowledged that this is a difficult standard stating, "[w]e simply must go beyond the unhelpful text and the frustrating difficulty of defining its key term and look instead to the objectives of ERISA as a guide to the scope of state law that Congress understood would survive." *New York State Conference of Blue Cross & Blue Shield v. Travelers Ins. Co.,* 514 U.S. 645, 656, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995).

In enacting ERISA, Congress intended to "protect...the interests of participants in employee benefits plans and their beneficiaries...by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies." 29 U.S.C. § 1001(b). Preemption of state law works toward that end by subjecting plans and plan sponsors to a uniform body of law and minimizing the administrative and financial burdens of complying with conflicting directives among states or between states and the federal government. See *Travelers Ins. Co.,* 514 U.S. at 656–57, 115 S.Ct. 1671 (citations omitted). *Woodworker's Supply,* 170 F.3d at 990.

The issue in this claim revolves around whether Via Christi's promissory estoppel claim 'relates to' the Chance Benefits Plan.

This circuit has recognized four categories of laws which have been held preempted because they relate to ERISA plans. Those are: First laws that regulate the type of benefits or terms of ERISA plans. Second, laws that create reporting, disclosure, funding, or vesting requirements for ERISA plans. Third, laws that provide rules for the calculation of the amount of benefits to be paid under ERISA plans. Fourth, laws and common-law rules that provide remedies for misconduct growing out of the administration of the ERISA plan. *Id.* at 1558.

Via Christi's claim is based on Kansas common law and it fits into the fourth category described above. However, state laws which affect plans in only a "tenuous, remote, or peripheral" manner will not be preempted. *Hospice of Metro Denver v. Group Health Insurance of Oklahoma,*

*Inc.,* 944 F.2d 752 (10th Cir.1991) quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). Via Christi argues that the Court should follow the *Hospice* and find no preemption.

In *Hospice,* the Tenth Circuit held that a health care provider's state law promissory estoppel claim was not preempted by ERISA. The health care provider sued because the insurance company made oral representations that the patient was eligible for benefits. Later, the insurance company denied eligibility because the patient had a preexisting condition. The *Hospice* court quoted a Fifth Circuit case stating:

If a patient is not covered under an insurance policy, despite the insurance company's assurances to the contrary, a provider's subsequent civil recovery against the insurer in no way expands the rights of the patient to receive benefits under the terms if [sic] the health care plan...*A provider's state law action under these circumstances would not arise due to the patient's coverage under an ERISA plan, but precisely because there is no ERISA plan coverage. Id.* at 754–755 quoting *Memorial Hosp. Sys. v. Northbrook Life Ins. Co.,* 904 F.2d 236 (5th Cir.1990).

The *Hospice* court added emphasis to the above passage showing that a party's eligibility status is pivotal when finding no preemption. This is an essential factual difference between *Hospice* and the case *sub judice.* Both parties agree that Haskins was an eligible beneficiary under the Chance Plan. (Compl.¶ 9); (Def. Mot. to Dismiss, 12). Plaintiffs acknowledge that BCBS has already paid part of Haskins' claim under the Plan but there remains due $509,935.74. (Compl.¶ 18). Because Haskins is an eligible beneficiary, his benefits were determined according to the

Plan and any action to recover promised benefits will also "relate to" the Plan and the processing of a covered claim. See *West Pines Psychiatric Hospital v. Samsonite Benefit Plan and Northwestern National Life Insurance*, 848 F.Supp. 907 (D.Colo.1994) (Hospital's promissory estoppel claim against insurance company for services rendered to an eligible beneficiary related to ERISA plan and was preempted). Accordingly, the Court holds that ERISA preempts Via Christi's promissory estoppel claim.

### V. Arnold's Claim

The Court expresses no opinion on the merits of Arnold's breach of fiduciary claim as BCBS did not include that claim in this motion to dismiss.

It is ORDERED that Defendant's Motion to Dismiss (Doc. 14) be GRANTED with respect to Chance Company's and the Chance Benefit Plan's breach of fiduciary duty claims and Via Christi's promissory estoppel claim;

It is Further ORDERED that Defendant's Motion to Dismiss (Doc. 14) be DENIED with respect to Via Christi's breach of fiduciary claim.